849 P.2d 963

**In the Interest of John Doe, and Jane Doe, children under eighteen years of age.**

**Jane DOE, Petitioner–Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, and Jane Roe, guardian ad litem, Respondents–Respondents on Appeal.**

**No. 20099.**

Court of Appeals of Idaho.

March 26, 1993.

Alan E. Trimming, Ada County Public Defender; Steven A. Botimer, Deputy Public Defender, Boise, for petitioner-appellant.

Larry EchoHawk, Atty. Gen., Mary Jo Beig, Deputy Atty. Gen., Boise, for respondent State.

Hyde, Wetherell, Bray & Haff; Eric L. Haff, Boise, for respondent guardian.

WALTERS, Chief Judge.

This is an appeal in an action to terminate the parent-child relationships between a mother and her two minor children. The order of termination was entered by a magistrate following an evidentiary hearing. Based upon the evidence presented at the hearing, the magistrate found that the mother had neglected the children and also that the mother was unable to discharge parental responsibilities because of mental deficiency and mental illness (paranoid schizophrenia) which, although controllable by medication, was not curable, was likely to continue for a prolonged indeterminate period of time and which created a situation injurious to the children's health, morals or well-being. The magistrate concluded that it was in the best interests of the children to terminate the rights of their natural mother. The magistrate's order of termination was upheld on appeal to the district court. The mother appeals from the district court's decision. We also affirm.

Our standard for review in actions to terminate parental rights encompasses several well recognized principles. We first note that the grounds for termination of a parent-child relationship must be shown by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Aragon*, 120 Idaho 606, 818 P.2d 310 (1991). In the instant case, the magistrate explicitly applied that burden to the factual and legal questions presented to him for resolution. Insofar as reviewing the factual findings made by the magistrate, we will not disturb any findings supported by substantial, competent evidence and we will draw all reasonable inferences in support of the magistrate's judgment. *In re Aragon, supra.* With respect to the appellate decision of the district court, that determination will be given due regard but we will review the trial record independently from the district court's decision. *Doe v. State, Dept. of Health and Welfare*, 122 Idaho 644, 837 P.2d 319 (Ct.App.1992).

On this appeal, as in the appeal to the district court, the mother does not challenge the magistrate's findings of fact or the conclusion, based upon the facts found, that she neglected the children. She disputes only the magistrate's conclusion that she suffered from a mental condition which rendered her incapable of discharging her parental responsibilities and that termination of her rights as a parent was therefore in the best interest of each of the children.

■ It is clear that the magistrate reached his decision to terminate the parent-child relationship upon alternative grounds—neglect (I.C. § 16–2005(b)) and mental illness rendering the mother incapable of discharging parental responsibilities coupled with a reasonable basis to believe the mother's condition "will continue for a prolonged indeterminate period and will be injurious to the health, morals and well-being of the child." I.C. § 16–2005(d). Our Supreme Court previously has held that the statutory grounds for termination

under I.C. § 16–2005 are independent and if any one or more of the grounds for termination are found, termination may be granted. *In re Aragon,* 120 Idaho at 611, 818 P.2d at 315, *citing Hofmeister v. Bauer,* 110 Idaho 960, 719 P.2d 1220 (Ct. App.1986). Here, each of the grounds found by the magistrate support the conclusion that the mother's parental rights should be terminated. Because the appellant has not challenged the magistrate's decision to terminate the relationship on the ground of neglect, the magistrate's order based upon that ground will be affirmed. It is well established that where the judgment of the lower court is based upon alternative grounds, the fact that one of the grounds may have been in error is of no consequence and may be disregarded if the judgment can be sustained upon one of those other grounds. *Fischer v. Fischer,* 92 Idaho 379, 382, 443 P.2d 463, 466 (1968); *Leydet v. City of Mountain Home,* 119 Idaho 1041, 812 P.2d 755 (Ct.App.1991). Thus we need not decide whether the magistrate correctly determined that the mother's mental condition provided a basis for termination of her parental rights under I.C. § 16–2005(d).

■ Once a statutory ground for termination is found, the magistrate must then decide what is in the best interest of the child. *In re Aragon,* 120 Idaho at 611, 818 P.2d at 315, *citing Rhodes v. State, Dept. of Health and Welfare,* 107 Idaho 1120, 695 P.2d 1259 (1985) and *Hofmeister, supra.* In this regard, our Supreme Court has noted that application of the best interests of the child test would sufficiently weigh the need for termination of parental rights with the statutory preference for preserving and strengthening family life, where the grounds for termination are minimal. *In re Aragon,* 120 Idaho at 611, 818 P.2d at 315.

■ Here the grounds for terminating the mother's rights because of neglect were far from minimal. The two children, one a girl and the other a boy, were born on November 4, 1984, and November 17, 1987, respectively, as a result of relationships between the mother and separate fathers. The mother was a transient without an established place of residence. She has an I.Q. of 73 and is functionally illiterate. According to a neuropsychological evaluation she can process about one-half to one-third of the information presented to her, limiting her ability to remember. She also suffers from alcoholism.

In February, 1989, the mother and children were found living in an automobile parked near the Boise Rescue Mission. The car was full of clothes and rotted food. The clothing worn by the children was dirty, did not fit and was inadequate for the weather at the time. One of them had no shoes. They were eating bubble gum for food. The children were taken into custody and placed in foster homes by the Department of Health and Welfare. The boy was diagnosed as suffering from tuberculosis, while the girl was found to have a heart murmur (a damaged valve in her heart that will eventually require surgery), suffered from constant ear infections, had been sexually abused and at one time had been infected with head lice. Her behavior problems include compulsiveness, tantrums, mood swings, aggression, enuresis and nightmares.

Earlier, in August 1988, the Department had investigated a home where the mother and the children were residing. The house was dirty, with maggots in uneaten food. Later, the family was evicted and moved to local emergency shelters. Although laundry, clothes, showers and toiletries were free for the residents, these children were dirty, unkempt and had runny noses. The manager of the shelter described the mother as yelling frequently at the children who were often crying. The mother was overheard telling the children that she was tired of them and they were ruining her life. The family moved into a Salvation Army facility for a few days in February, 1989, but then left to live on the streets.

After the children were taken into custody by the Department, a case plan was developed with the mother designed to aid her in providing a home for the children and increasing her understanding of par-

enting. The mother did not follow through with the plan but left town.

In February, 1990, the Department petitioned for termination of the mother's rights. Before the petition was heard the mother was involuntarily committed to State Hospital South pursuant to I.C. § 66–329 (involuntary mental commitment) where she was diagnosed with paranoid schizophrenia. She was treated in that hospital during April and May, 1990.

On August 29 and 30, a hearing was held on the termination petition. After considering the evidence presented, the magistrate concluded by written order on October 2 that the Department had proved by clear and convincing evidence a long-term history of parental neglect of the children by their mother and that the children were in need of permanent placement. However, because of the mother's recent treatment in the state mental health facility and because she had shown some improvement while taking medications and was attending mental health counseling and alcoholism treatment, the court decided not to hold that termination was in the best interests of the children at that particular time. Instead, the magistrate continued the matter for six months to give the mother an opportunity to establish that she had progressed to a level where she could properly care for her children.

The Department offered services to the mother during the extended period and assisted her in receiving federally subsidized housing in January, 1991. However, the mother rejected other offered services and made little progress.

The case came back before the court for hearing on May 13 and 14, 1991. After considering the evidence presented at both hearings, the magistrate concluded that the mother's parental rights should be terminated. The written findings of fact and conclusions of law subsequently entered by the magistrate on August 2, 1991, provide a detailed summary of the evidence leading the court to its conclusion. One of those findings, number 21, contains persuasive observations made by a clinical psychologist with regard to the mother's parenting abilities. It reads:

21. Dr. Craig Beaver, Ph.D., testified at both termination trials. Dr. Beaver is a clinical psychologist, licensed to practice in the State of Idaho. Dr. Beaver performed a neuropsychological evaluation (petitioner's exhibit 5) on [the mother] on the 30th of May, 1990, an additional ninety minute session of psychometric testing and further evaluation on June 4, 1990, and a follow-up clinical interview on the 4th of March, 1991. In May of 1990 to the present [the mother] was taking Novaine and cogentin to control her schizophrenia.

Plaintiff's exhibit five, Dr. Beaver's report, was admitted at the August 1990 hearing. His testimony paralleled the report. Dr. Beaver testified that [the mother] has a chaotic history, including being sexually abused as a child. She has continually experienced relationship difficulties due to her poor judgment. [The mother] is very low functioning, with a full scale I.Q. of 73. She has a poor memory and poor organizational skills. This is compounded by her metal illness, chronic paranoid schizophrenia and a long term addiction to alcohol. [The mother] does not acknowledge or have any insight into her mental illness. She has no understanding or awareness of the continued, lifelong need for medications to control her illness. She takes the medications only to get her children back. [The mother] did not see a contradiction between attending A.A. and consuming between one to one and a half cases of wine coolers every two days. [The mother] has led a very transient life style. Her affect and emotions are severely blunted, making it difficult to show emotions appropriately. She is rigid and concrete in her thinking. During testing, [the mother's] emotional tone was often inappropriate. Her responses to the projective tests were inappropriate, with themes of violence prevalent. When shown a picture of a woman and a child, [the mother's] story for the picture was that the mother was disgusted with the child and was going to choke him to

death. She further remarked that it was the child's problem to get away.

Dr. Beaver testified that during the follow-up interview and evaluation conducted in March of 1991, [the mother's] hygiene had improved. However, she still exhibited poor problem solving skills. Some people were living with her in her subsidized housing (a clear violation of the terms) that she did not like, but did not know how to get them to move out, even though it jeopardized her housing. [The mother] continued to show little awareness or insight as to why she should continue with her medication, continue to attend A.A., attend parenting classes or family training sessions. In spite of [the mother's] concern for [her daughter], Dr. Beaver expressed a "serious concern that [the mother] could provide nurturing and an appropriate environment for her daughter." Dr. Beaver observed "no significant change (from 1990) and no evidence to suggest (any significant change)". [The mother] would show little empathy for the children's problems, especially if stressed.

In summary, the prognosis for [the mother's] ever being able to effectively and appropriately parent her children is poor. Children need stability, nurturing and predictable behavior from their parents. Children depend on their parents to make reasonable and appropriate judgments for their safety. [The mother's] history and performance on the psychological testing clearly demonstrates that she is unable to provide these essentials. The children would always be at risk with [the mother].

In her favor, [the mother] has finally secured housing, is attending A.A. regularly, and is staying on her medications. However, she lacks insight as to why these things are essential for the welfare of her children. She is complying because she was told that she had to do these things in order to have her children returned. [The mother] has a restricted range of emotions, with the exception of anger. When stressed, she tends to become explosive, and her anger is "intense and poorly controlled." Due to her limited intellectual functioning, her mental illness, her chaotic life history, her inability to function when stressed, her inability to plan ahead, severely limited reasoning and problem solving skills, her track record of poor judgment in providing for her own safety and that of the children, and a significant drug/alcohol problem, termination of her parental rights and adoption of the children would be in their best interests. Dr. Beaver's report states that other children of [the mother] have been terminated previously.

If the best predictor of future behavior is past behavior, the prognosis is so poor as to be non-existent, even with extensive support.

We have carefully reviewed the record in this case. We conclude that substantial and competent evidence was presented to support the magistrate's determination that the mother had neglected the children by failing to provide parental care necessary for the health, morals and well-being of the children. Given the history and facts of neglect contained in the record, we hold that it was not clearly erroneous for the magistrate to find that termination of the mother's rights was in the best interests of the children. The decision of the magistrate is affirmed. No costs or attorney fees on appeal are awarded.

SWANSTROM, J., and WESTON, J., pro tem., concur.