112 P.3d 799

**John and Jane DOE, Appellants–Appellants on Appeal,**

v.

**DEPARTMENT OF HEALTH AND WELFARE, HUMAN SERVICES DIVISION, Respondent–Respondent on Appeal.**

No. 30941.

Supreme Court of Idaho, Boise, April 2005 Term.

May 3, 2005.

Stephen D. Thompson, Ketchum, for appellants.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.

JONES, Justice.

John and Jane Doe appeal from the district court's affirmance of the magistrate court's order terminating their parental rights based on findings that the Does neglected their two children and that termination served the best interests of the children. We affirm.

I.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves two children, the Does' son and daughter, with divergent problems and needs. The son is the elder, having been born on December 16, 1997. He has difficulties with speech and suffers from Attention Deficit Hyperactivity Disorder and Reactive Attachment Disorder. He was taken into state custody on December 8, 2000, and has remained in the custody of the state since that date. The daughter is significantly delayed, both physically and mentally. She was

born on May 30, 1999, and remained in the physical custody of the Does until December 4, 2001, at which time she was taken into state care.

The son was initially removed from the Does' home based on a report that he had been disciplined with an electric flyswatter.[1] On January 8, 2001, the Does stipulated that he had been threatened with the flyswatter, that their home was dirty and unsanitary, and that the home lacked adequate plumbing and heat. The Does further stipulated that the son had, at some point, had a severely bruised eye and that he had a burned abdomen from coming into contact with another adult's cigarette. Based upon this initial stipulation, the son was placed in foster care. The daughter was removed from the home a year later, when the Department of Health and Welfare (Department) filed an Amended Petition Under Child Protection Act, based upon several reports of poor parenting made by various service providers.

A trial was held in October of 2002. The magistrate court determined that the Does had neglected their children as defined under Idaho law and that it was in the best interests of the children to terminate the Does' parental rights. An order terminating the Does' parental rights was entered on January 17, 2003. The Does appealed to the district court, which affirmed the decision of the magistrate court. The Does timely appealed to this Court.

## II.

### STANDARD OF REVIEW

■ The Idaho Court of Appeals succinctly summarized the standards of evidence and review applied by this Court in termination cases, as follows:

> It is well settled that, in a proceeding to terminate a parent-child relationship, the due process clause mandates that the grounds for termination must be shown by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Matter of Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991).

*See also*, I.C. § 16–2009. When the trial court finds that the grounds as defined by statute, which are alleged for termination, are established by clear and convincing evidence, those findings will not be overturned on appeal unless they are clearly erroneous. *In Interest of Crum*, 111 Idaho 407, 725 P.2d 112 (1986). Clear error, in turn, will not be deemed to exist where the findings are supported by substantial and competent, albeit conflicting, evidence. *Id.* "It is for the trial court to determine whether clear and convincing evidence supported the termination of parental rights. Our task on this appeal is to determine whether the trial court's finding ... is clearly erroneous." *Id.* at 409, 725 P.2d at 114. Furthermore, "in reviewing such findings, this Court will indulge all reasonable inferences in support of the trial court's judgment" when reviewing an order that parental rights be terminated. *Aragon*, at 608, 818 P.2d at 312.

*In Interest of Baby Doe*, 130 Idaho 47, 53, 936 P.2d 690, 696 (Ct.App.1997). When reviewing the decision of a district court acting in its appellate capacity, the Supreme Court reviews the magistrate judges decision independently of, but with due regard for, the district courts intermediate appellate decision. *Swanson v. Swanson*, 134 Idaho 512, 515, 5 P.3d 973, 976 (2000).

## III.

### ANALYSIS

**A. The Magistrate Judge Did Not Err When He Held The Children At Issue Were Neglected Under Idaho Law.**

■ Courts have the authority to terminate parental rights when a parent has neglected his or her child. Neglect is defined under Idaho law as "a situation in which the child lacks parental care necessary for health, morals and well-being." I.C. § 16–2005(b). The magistrate court found that the Does had neglected their children, and this finding was affirmed by the district court. The Does assert the magistrate court's finding of neglect is not supported by substantial

---

1. No evidence was presented at trial to establish

that he was actually struck with the flyswatter.

and competent evidence for a number of reasons. They state in their opening brief that, "The magistrate relied in his finding of neglect primarily on the status of the living arrangements in Ketchum, [John Doe's] failure to find employment or obtain income assistance, Ms. Traughber's observations, and the incident regarding [the daughter's] fall from a slide."

Although the Does admitted their home environment in Ketchum was unsatisfactory, they assert they had taken steps to improve it. They point out they had moved to a "relatively clean home in Arco with plumbing and heat and food prior to [the daughter's] removal," and claim that this was overlooked in the ruling. The judge did mention the fact that when the son was removed from the home in Ketchum, the home lacked adequate plumbing, a safe heating system and was not a safe or healthy environment for either child. He also stated that the Does failed to remedy any of these issues for several winter months, even though the daughter continued to live with them. The court responded to the Does' argument that they were in a rental property and had little control over these issues by stating that no evidence was presented to indicate the Does were prevented from moving out of the "less than marginal living quarters." However, as the district judge noted, the magistrate judge did address the fact that the Does eventually moved out of Ketchum when he stated the Does had moved "out of Blaine County and into a better physical living environment, i.e., one that has a reliable heat source, unbroken windows, and adequate plumbing." Therefore, the Does' argument that their move was not taken into consideration is unfounded.

The Does assert the court relied heavily on the Does' failure to have financial stability. However, they do not argue that the judge's findings in this regard were not based on substantial and competent evidence, nor do they argue there is conflicting evidence regarding this issue. As noted by the court, Jane Doe had worked briefly at a variety of low-paying jobs and had reapplied for and was receiving SSI benefits in the amount of $538 per month for an undisclosed disability. John Doe had not worked in over six years

when the trial took place, and there was no indication that he had any source of income. John Doe claimed that he suffers from various health problems and believed himself to be disabled. There is evidence in the record to substantiate some of his contentions; however, there was no indication that he followed through with applications for disability benefits. In fact, there is no evidence that he has had any source of income attributable to him since the events of this case began in late 2000. Further, neither of the Does has contributed any financial support for their children since they were taken into custody. The judge noted that he was particularly concerned that the Does reported that on more than one occasion they did not have any food in the house while their daughter was in their custody, though they continued to have internet service. Also, the Does had at one point obtained food stamps but did not follow through to maintain their eligibility to continue receiving such assistance. In his conclusion, the judge stated:

> The issue here is not one of poverty. There are plenty of people with inadequate incomes who are able to manage meager resources so as to take care of their children's needs. [John Doe] seems unwilling or unable to either find employment or to jump through the bureaucratic hoops required to qualify for federal disability assistance. Parents are not required to have any particular standard of living but are required to obtain sufficient resources with which to support themselves and their children. The [Does] have demonstrated a persistent pattern of being unable to do so. Worse, they have a persistent pattern of failing even to take advantage of assistance programs that may so provide.

The Does next argue the court relied too heavily on the observations of Ms. Pat Traughber, a contract provider for the Department. Ms. Traughber created a list of her concerns in bullet form, which included the following:

· Absence of child centered parenting related to a lack of parental motivation and/or ability to prioritize the needs of the children over their own.

- Chronic and chaotic lifestyle, with the inability to demonstrate and maintain a stable living environment to meet the children's basic needs.

- A lack of motivation or desire to take responsibility for their own actions and responsibilities as parents, while blaming others (including the child) for their circumstances.

- Role reversal and unrealistic expectations of children.

- Perception that they as adults have been victimized rather than the child. This raises concerns about their ability to protect their child from harm either through direct participation or from victimization by others.

- Lack of recognition of the problems that brought the children to the attention of Child Protection Services and an unwillingness to make changes necessary to allow reunification to occur.

- Lack of urgency (as demonstrated by their behavior, not what they verbalize) to have the child returned to their care.

- Lack of knowledge related to basic day-to-day care, parenting and behavior management coupled with the unwillingness or inability to utilize what they have been taught to improve the quality of their children's life experiences.

- Lack of empathy and indifference to child's experiences, coupled with the lack of ability to assess risk and safety based on the child's age and development.

- The absence of a successful history in the parent's ability to provide their own needs for food, shelter, and medical care without heavy reliance on State and Federal agencies and support programs or extended family members.

- Parents have the intellectual ability to function at a much higher level than is being demonstrated in their day to day lives.

- Unpredictability of mood and behavior in the parental role of both [Does].

- Most importantly, a lack of emotional connection between parent and child, especially with regard to [mother] and [son].

In considering the testimony of Ms. Traughber and other Department witnesses, the judge expressed some criticism and concern. He observed that Ms. Traughber's report gave the appearance of being "the opening bell of a termination action." The judge stated that the involvement of the Family Investment Team, a group which contracts with the Department to provide behavior modification training with respect to parenting techniques, "appeared geared at least as much toward gathering evidence for a termination case as it represented a genuine effort to employ any behavior modification techniques which had any likelihood of success." Further, he expressed dismay that "the more helpless [daughter] was not removed from the very same home environment that was considered too hazardous for [the son] to live in December of 2000." However, despite his expressed concerns, the judge found there was no evidence that contradicted the findings of Ms. Traughber and adopted her list of concerns as his own.

The Does argue that Ms. Traughber's assessment is inadequate because it was conducted after spending only four and one-half hours with the Does. However, after a thorough review of the record, this Court finds itself in agreement with the following statement by the district judge:

> Some things may be so open and apparent that only one with a tentative grasp of the obvious would require additional time and resources to come to the same conclusion. Furthermore, regarding the findings of fact, it is the trial judge who is charged with determining the credibility of the witnesses, not the Court on appeal.

Finally, the Does take issue with the court's consideration of an incident where the daughter was injured after falling off a slide. They assert that their description of the incident, i.e. that they were both behind and in front of the daughter when she fell, cannot be contradicted. It appears the court accepted this description, as indicated by the following statement: "There is no evidence to suggest that the [Does] deliberately caused [the daughter] to fall from the slide. The court is certain they were attempting to engage in a playtime activity with their daugh-

ter when she fell on her head from a height of ten feet." While the court found the Does did not cause the injury to their daughter, it stated the incident confirmed Ms. Traughber's concerns that there was a serious problem with the Does' "judgment, insight, supervision or all three", given the daughter's physical limitations and the choice of an appropriate activity. The court noted that the daughter's development of motor skills was seriously delayed, that she was unsteady, and that she suffered frequent falls.

There was no evidence to suggest that the daughter's disabilities were a result of the Does' neglect. However, the court found the Does' lack of empathy and insight as to her limitations were not conducive to her health or well being. With regard to the son, the court noted that the testimony and report of Dr. Richard Smith, a psychologist who testified for the Department, indicated the son's Reactive Attachment Disorder was "almost certainly" caused by the Does' "unstable home life coupled with their lack of engagement with him."

The facts of this case are extensively set forth in a 48–page decision issued by the magistrate judge. His articulate and in-depth decision demonstrates a thoughtful evaluation of all of the evidence. It is clear that the judge carefully reviewed and considered the evidence submitted in support of the Does and that he critically evaluated the actions and evidence of the Department. This Court finds that there is substantial and competent evidence in the record to support the court's finding of neglect.

### B. The Magistrate Judge Did Not Err When He Held That It Was In The Best Interests Of The Children To Terminate The Parental Rights Of The Does.

When a judge finds a statutory ground, such as neglect, he or she must then decide if termination of parental rights is in the best interests of the children. *Doe v. State of Idaho, Department of Health and Welfare*, 123 Idaho 502, 849 P.2d 963 (Ct. App.1993). Here, the court properly observed that "the most important thing that can be done for both [the daughter] and [the son] is to provide them with a stable and nurturing home environment." He considered whether this goal would be best served by giving the Does another chance or by terminating their parental rights. He observed, further, "The [Does'] constellation of personality disorders explains to a large extent how they developed such a poor relationship with the Department. Nonetheless, it is also clear that same constellation makes it difficult if not impossible for them to make substantial changes in their lives so as to provide a safe and stable home for the children." He noted that, although the Does had made some modest improvements, they had not demonstrated an ability to provide the children with the type of home environment they needed in order to have a chance to develop.

The Does assert that they had made improvements by moving into a new home and by virtue of the fact that Mr. Gordon Lee Rhine had become the Does' counselor and thought the children could be returned to the Does as long as they followed his case plan. The judge addressed this assertion by stating:

[T]he court had misgivings about Mr. Rhine's ability to address the [Does'] complete lack of parenting skills as related to the specific needs of their children in the context of a twelve-week course entitled "Love and Logic". Specifically, the court was concerned that a course which emphasizes "natural consequences" as the appropriate disciplinary technique for children might fit a bit too neatly into the laissez-faire parenting style already exhibited by the [Does]. The court was concerned that the [Does] would hear only the part of the course that said children should suffer the natural consequences of their actions as the primary disciplinary technique and would miss the part regarding supervision and protection. Standing by and watching [the daughter] nearly pull a hot coffee pot off a countertop and onto herself came to mind as an example of a natural consequence. The court believes that these parents' lack of insight into the needs of their children would require much more than the twelve-week course as described by Mr. Rhine.

█ Furthermore, the court considered testimony that the children were in a stable foster home and their special needs were being addressed. The son is being treated for ADHD, is receiving speech therapy and is constantly supervised. The daughter has made modest progress with her speech, is walking better, her night terrors have abated though not ended entirely, and she has fewer staring incidents. Evidence of improvement in the well-being of children while living apart from their parents is a factor appropriate to consider in determining what will serve their best interests. *Hofmeister v. Bauer*, 110 Idaho 960, 966, 719 P.2d 1220, 1226 (Ct.App.1986).

We find there is substantial and competent, albeit conflicting, evidence to affirm the finding of the magistrate court that it is in the best interests of the children to terminate the parental rights of the Does.

## IV.

## CONCLUSION

This Court affirms the order of the magistrate court terminating the parent-child relationship between the Does and their two children.

Chief Justice SCHROEDER, Justices TROUT and BURDICK, and Justice WALTERS, Pro Tem concur.