725 P.2d 112

In the Interest of CRUM, Randy, D.O.B. 3–23–79, Crum, Jessica, D.O.B. 3–11–81, Crum, Michael, D.O.B. 5–14–82, Children Under 18 Years of Age.

Elroy CRUM, Jr., Appellant,

v.

STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, Respondent,

and

Randall W. Day, Guardian Ad Litem for Randy Crum, Jessica Crum and Michael Crum, Respondents.

No. 15750.

Supreme Court of Idaho.

July 23, 1986.

Rehearing Denied Sept. 19, 1986.

Jim Jones, Atty. Gen., Boise, Janice L. Kroeger, Deputy Atty. Gen., Coeur d'Alene, for respondent, State of Idaho, Department of Health & Welfare.

Randall W. Day, Esq., Bonners Ferry, for respondents children.

James F. Lyons, Bonners Ferry, for appellant, Elroy Crum.

DONALDSON, Chief Justice.

Carol Ann and Elroy Crum are the natural parents of three minor children: Randy, Jessica, and Michael. On June 14, 1982, Carol Ann and the children, then ages: 3 years, 1 year, and 1 month, left Elroy in Texas and traveled to Bonners Ferry, Idaho, to stay with Carol Ann's parents. Upon her arrival in Bonners Ferry, Carol Ann placed Jessica with Ida Stolley, Carol Ann's sister. Elroy followed his family to Bonners Ferry and remained with them for approximately one week before returning to Texas.

Thereafter, on July 22, 1982, Carol Ann voluntarily placed the children in the custody of the Department of Health and Welfare. Randy and Michael were placed in a foster home, while Jessica remained with the Stolleys. Except for a nine-day period in August of 1982 when they were returned to their mother, the children have remained in foster care since that date.

On August 9, 1982, a petition for a hearing under the Child Protective Act was filed on behalf of the Crum children. Following a hearing on September 1, the court issued an order placing the children in the

custody of the Idaho Department of Health and Welfare for one year. Carol Ann was present at the hearing and stipulated that the allegations of neglect contained in the petition were true. Elroy was not present at the hearing.

On April 27, 1983, the Department filed a petition to terminate the parental rights of both Elroy and Carol Ann on the grounds of abandonment, neglect and the best interests of both the children and the parents. A hearing on the petition was held on June 7 and 16, 1983. Both parents were present at the hearing and were represented by counsel. Carol Ann consented to the termination of her parental rights, Elroy did not.

Following the two days of testimony, the magistrate found that Elroy had not contributed to the support of the children or attempted to maintain any reasonable and normal parental relationship with them. He noted that the parents were virtual strangers to their children and found that unless their parental right's were terminated, the course of neglect would likely continue and the children would be at risk. He concluded that the evidence clearly and convincingly demonstrated that both parents had abandoned the children and ordered their parental rights terminated.

Elroy appealed the magistrate's decision to the district court. He requested that the matter be heard as a trial de novo, which request was denied. In an order dated August 22, 1984, the district court affirmed the magistrate's decision. The district court found that the record overwhelmingly demonstrated that Elroy had not maintained a normal parental relationship with his children, including, but not limited to, his failure to provide reasonable support or maintain regular personal contact for a period of over one year. Elroy now appeals to this Court.

I.C. § 16–2005 provides that the court may order a parental relationship terminated under one or more of six specific grounds. I.C. § 16–2009 requires that the grounds be proven by clear and convincing evidence. One of the grounds for terminating the parent-child relationship is that the

"parent has abandoned the child by having failed to maintain a normal parental relationship, including but not limited to reasonable support or regular personal contact...." Failure to maintain a normal parental relationship without just cause for a period of one year is stated to constitute prima facie evidence of abandonment. I.C. § 16–2005(a).

In the instant case, the magistrate court concluded that:

"the evidence clearly and convincingly demonstrates that the parents of the above named children have abandoned the children by having failed to maintain a normal parental relationship, including but not limited to reasonable support or regular personal contact and that such failure has continued for the approximate one year last past."

On appeal, the district court affirmed, stating in part:

"The record is overwhelming that Elroy Crum has not maintained a normal parental relationship, including, but not limited to reasonable support or regular personal contact with the children for over a period of one year."

"..."

"In this case the Magistrate was justified in finding by clear and convincing evidence that Elroy Crum had abandoned his children and that his parental rights should be terminated."

On appeal to this Court, Elroy contends that the evidence does not support the lower courts' findings that he abandoned his children.

■ Our standard of review in parent-child termination cases is well settled. Essentially, where the trial court finds that abandonment, as it is defined in the statute, is established by clear and convincing evidence, those findings will not be overturned on appeal unless they are clearly erroneous. Clear error, in turn, will not be deemed to exist where the findings are supported by substantial and competent, albeit conflicting, evidence. *Rhodes v. State*, 107 Idaho 1120, 695 P.2d 1259 (1985);

*Interest of Castro,* 102 Idaho 218, 221, 628 P.2d 1052, 1055 (1981). It was for the trial court to determine whether clear and convincing evidence supported the termination of parental rights. Our task on this appeal is to determine whether the trial court's finding that Elroy abandoned his children is clearly erroneous.

▮ Our review of the record convinces us that the magistrate's findings were supported by substantial and competent evidence. The record indicates that between June 14, 1982—the date Carol Ann and the children left Texas—and April 27, 1983—the date the petition for termination was filed—Elroy saw his children on only two brief occasions. One such visit was at the insistence of Social Worker Warren Middlemist and lasted approximately one hour. Elroy returned to Texas in late July or early August of 1982. At that time, he informed the Department of Health & Welfare that he intended to retain a lawyer to instigate divorce proceedings and that he would seek custody of the children. Despite this assertion, when he was contacted by the Department on August 13, 1982—just prior to the filing of the petition under the Child Protective Act—he stated that he was not working and could not care for the children or contribute to their support.

Following the child protective hearing, in September of 1982, Elroy was advised that he must maintain a regular contact with the children. He did not, however, initiate any contact with them and made no contribution toward their support.

With the exception of the nine-day period when they were returned to the mother, the Crum children have been in foster care continuously since July of 1982. Michael who is now four, has not lived with his father since he was a month old. Five-year-old Jessica, was a year old when her parents separated and seven-year-old Randy was three. As the magistrate noted, the natural parents are virtual strangers to their children.

There is no strict rule by which a court may determine whether abandonment has occurred. Each case must be decided on its own particular facts. *Clark v. Jelinek,* 90 Idaho 592, 599, 414 P.2d 892, 895 (1966). Under the facts of this case, we cannot say that the magistrate's finding of abandonment was clearly erroneous. We agree with the magistrate that Elroy's failure to provide any support for his children or to make any real attempt to communicate with them for over one year, despite the fact that he knew their mother was unable to care for them and that they had been placed in foster care, was sufficient evidence to support a finding of abandonment.

Much of the appellant's briefing to this Court is devoted to a discussion of the due process issues involved in a parent-child termination. Elroy makes much of the fact that he was not present or represented by counsel at the initial child protection hearing in September of 1982. However, this argument was raised for the first time on appeal to this Court. It is a well settled rule that appellate courts will not decide on issues which were not first presented and ruled on in the proceedings below. *City of Boise v. Gabica,* 106 Idaho 94, 96–7, 675 P.2d 354, 356–7 (Ct.App.1984), *Christensen v. Idaho Land Developers, Inc.,* 104 Idaho 458, 460, 660 P.2d 70, 72 (Ct.App.1983).

We need not discuss the merits of Elroy's lack of notice contention because of the untimeliness of the claim. However, even if the claim had been timely, it still would fail.

▮ The record reveals that Elroy was notified of the proceedings shortly after they occurred and advised of his right to appeal the decision. A letter sent to Elroy in September of 1982 from the Department of Health and Welfare provided in part as follows:

> "Enclosed is a copy of the child protective petition that was filed in the interests of Randy, Jessica and Michael, and a copy of the order entered by Magistrate Harden following the hearing.

"In the event you did not receive notice of the hearing, you should know that you are entitled to a hearing. If you believe the allegations in the petition are not true and would like to contest the petition, I suggest you contact an attorney to determine what course of action you would need to take.

"You also have a right to appeal the decision and order entered by the Court, but there are time limits. If you want to consider doing that, then I suggest you contact an attorney for advice about doing that as well."

The letter was sent by registered mail and was received and signed for by Elroy on September 28, 1982.

Elroy was informed, both in the letter and in a subsequent conversation with Middlemist, of what he needed to accomplish in order to have his children returned to him. He was also sent a social agreement outlining the conditions he needed to fulfill. (The agreement was never returned.) Further, he was specifically advised of the importance of maintaining regular contact with his children.

Finally, the result of the child protection hearing vested custody of the children in the state for only one year. Subsequently, within that one year, the state brought the termination proceedings. Elroy was present at the termination hearing and was provided with counsel. He was afforded a full opportunity to present witnesses on his behalf and to refute any evidence or testimony presented by the Department.

We have reviewed the record in this case and we conclude that the procedure by which Elroy's parental rights were terminated comported fully with the requirements of due process. Accordingly, the magistrate court's order terminating Elroy's parental rights is affirmed.

No costs or attorney fees awarded.

SHEPARD, BAKES, BISTLINE and HUNTLEY, JJ., concur.