187 P.3d 1227

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Nick McDowell HENSLEY,
Defendant–Appellant.**

No. 32902.

Supreme Court of Idaho,
Boise, May 2008 Term.

June 11, 2008.

Molly J. Huskey, State Appellate Public Defender, for appellant. Justin Curtis argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Thomas Tharp argued.

W. JONES, Justice.

Nick McDowell Hensley was convicted by a jury for three counts of lewd conduct with a minor under the age of sixteen, and one count of sexual abuse of a minor under the age of sixteen.[1] Prior to trial, the district court, Honorable Michael R. McLaughlin presiding, granted the State's motion in limine to exclude a recorded conversation between J.H. (Hensley's daughter) and Tonya Bingle (J.H.'s mother). The trial court found that the recorded conversation violated the Idaho Communications Security Act (I.C.S.A.). I.C. §§ 18–6701 to –6725. Under the I.C.S.A., all evidence obtained in violation of the act is excluded from trial. I.C. § 18–6705. Hensley appeals to this Court, contending that (1) the trial court erred by granting the State's motion to exclude the recorded conversation, (2) Hensley did not violate the I.C.S.A because he has the power to consent to the recorded conversation on behalf of J.H., and (3) this Court denied him due process during this appeal by denying Hensley's attorney's request to listen to the recorded conversation.

## FACTUAL AND PROCEDURAL BACKGROUND

The charges in this case were brought based on the allegations of two victims. The two victims in this case, J.H. and A.H., both resided with Hensley when the individual incidents occurred. J.H. is Hensley's biological daughter and A.H. is Hensley's adoptive daughter. In 2004, J.H. reported to her biological mother, Ms. Bingle, that Hensley had touched her inappropriately. She testified at trial that on three separate occasions, Hensley had engaged in inappropriate touching. J.H. was eleven-years-old at the time of the incident. A.H. testified at trial that during the summer of 2004 she and Hensley went to the Kuna Caves. A.H. stated that she saw Hensley's penis when he urinated in the caves. Later, in the car, Hensley unzipped and showed her his penis and touched himself inappropriately. A.H. told her biological mother, Starr Hensley, about the incident later that evening. Both mothers promptly notified authorities regarding their daughters' allegations.

During the custody dispute for J.H. between Hensley and Ms. Bingle, Starr Hensley recorded a conversation between J.H. and Ms. Bingle. Prior to trial, on Hensley's

---

1. I.C. §§ 18–1506, –1508.

criminal charge, the State brought a motion to have the conversation excluded. Hensley alleges that the conversation consists of Ms. Bingle persuading J.H. to falsely accuse Hensley of molestation. The district court granted the State's motion, and the evidence was preliminarily excluded. The district court also sealed the recorded conversation and the corresponding notes. This Court refused to unseal the evidence to allow Hensley's appellate counsel an opportunity to listen to the recorded conversation. Hensley appeals the exclusion of that evidence and the denial of the motion to unseal the evidence for purposes of this appeal to this Court.

## ISSUES ON APPEAL

1. Whether the district court erred when it granted the State's motion in limine to exclude the recorded conversation between J.H. and Tonya Bingle.
2. Whether the district court erred in finding that Hensley did not vicariously consent, on behalf of J.H., to the recorded conversation.
3. Whether the exclusion of the evidence violated Hensley's Sixth and Fourteenth Amendment rights.
4. Whether this Court denied Hensley due process on appeal by denying Hensley's attorney's request to review the recorded conversation which has been ordered sealed by the lower court.

## STANDARD OF REVIEW

■■■■ The I.C.S.A. is modeled after the federal Omnibus Crime Control and Safe Streets Act of 1968. *Hoskins v. Howard,* 132 Idaho 311, 315, 971 P.2d 1135, 1139 (1998). The federal statute provides a minimum level of protection and the states are free to provide more if they so choose. *Hoskins,* 132 Idaho at 314–15, 971 P.2d at 1138–39 (citing *United States v. McKinnon,* 721 F.2d 19, n. 1 (1st Cir.1983)). The interpretation of a statute is a question of law, over which this Court exercises free review. *State v. Thompson,* 140 Idaho 796, 798, 102 P.3d 1115, 1117 (2004) (citation omitted).

This Court will not construe plain, unambiguous statutory language unless the result is palpably absurd. *Id.* The statute must be viewed as a whole, and analysis begins with the literal words which are given their plain, usual and ordinary meaning. *Id.* "It is a fundamental law of statutory construction that statutes that are in *pari materia* are to be construed together, to the end that the legislative intent will be given effect." *State v. Yager,* 139 Idaho 680, 689–90, 85 P.3d 656, 665–66 (2004) (citation omitted).

■■■■ This Court reviews factual findings of the trial court and determines whether they are clearly erroneous. *Crum v. State, Dep't of Health & Welfare,* 111 Idaho 407, 408, 725 P.2d 112, 113 (1986). A trial court's factual determinations are not clearly erroneous if they are supported by substantial and competent evidence. *Crum,* 111 Idaho at 408, 725 P.2d at 113. A finding that is supported by substantial and competent evidence will not be reversed on appeal. *Id.*

**The district court did not err when it granted the state's motion in limine to exclude the recorded conversation between J.H. and Tonya Bingle.**

■■■■ I.C. §§ 18–6701 through –6725 is entitled the Idaho Communications Security Act (ICSA). The I.C.S.A. makes it unlawful to intercept wire or oral communications without the prior consent of one of the parties. I.C. § 18–6702(2)(d).

> Whenever any wire, electronic or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court ... if the disclosure of that information would be in violation of this chapter.

I.C. § 18–6705. Therefore, any oral communication which has been intercepted without the prior consent of one of the parties to the communication may not be introduced into evidence. The plain language of the statute clearly states that wrongfully obtained communications shall not be admissible evidence. This Court finds that the district court did not err when it found the recorded conversa-

tion between Tonya Bingle and J.H. to be inadmissible as evidence.

 Hensley contends that this Court should apply an exception to phone calls recorded in the home. Hensley contends that statutory support for this domestic exception exists in the following provisions:

Definitions as used in this chapter:

(4) "Electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, electronic or oral communication other than:

(a) Any telephone or telegraph instrument, equipment or facility or any component thereof:

(i) Furnished to the subscriber or user by a provider of wire or electronic communication service *in the ordinary course of its business* and being used by the subscriber or user *in the ordinary course of its business* or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business;

I.C. § 18–6701(4)(a)(i) (emphasis added). This Court finds that no domestic exception exists through a plain reading of the ordinary language of the statute. The plain and literal language of the statute creates an exception for the "ordinary course of business," but in no way is recording a daughter's phone conversation with her biological mother "in the ordinary course of business." Appellate counsel argued that the ordinary term of "business" could constitute a parent being in the business of raising his or her child. However, the term is "ordinary course of business," not merely "business," which has generally been defined in terms of commerce and is well-used throughout the Uniform Commercial Code.[2]

The district court did not err when it found that the recorded conversation (1) violated the I.C.S.A., and (2) was therefore, inadmissi-

ble evidence under the I.C.S.A. A plain reading of the statute clearly indicates that the legislature intended for violations of the I.C.S.A. to be inadmissible evidence.

**The district court did not err when it found that Hensley did not vicariously consent, on behalf of J. H., to the recorded conversation.**

The I.C.S.A. clearly exempts conversations which were recorded with the consent of one of the parties. I.C.S.A. § 18–6702(2)(d). For the purposes of its decision, the district court assumed that Hensley consented to the recorded conversation.[3] That is, the court presumed that Hensley consented to the recording on behalf of J.H., and Starr Hensley executed Hensley's consent. Ultimately, the lower court concluded that Hensley did not vicariously consent to the recorded conversation between J.H. and Tonya Bingle because Hensley did not have J.H.'s best interest in mind, and did not act with an objectively reasonable good faith belief that recording the conversation was necessary to protect J.H.

 Whether this Court allows the doctrine of vicarious consent to apply to the recording of a child's telephone conversation is a question of law over which this Court exercises free review. There is no provision within the I.C.S.A. which expressly permits a parent to consent on behalf of a child. The I.C.S.A. has a clear exception for instances in which one of the parties to the conversation consents to the recording. Hensley would like this Court to extend the consent exception to instances where a parent vicariously consents on behalf of the child. Hensley argues that the power to vicariously consent to recording a child's conversation stems from the duty to control the child. In Idaho, a parent has an affirmative duty to control their child because of "knowledge of an un-

---

2. BLACK'S LAW DICTIONARY (6th ed. 1991) defines it as "[t]he transaction of business according to the common usages and customs of the commercial world generally or of the particular community or (in some cases) of the particular individual whose acts are under consideration … In general, any matter which transpires as a matter of normal and incidental daily customs and practices in business."

3. Starr Hensley did the actual recording. Whether Hensley had knowledge of the recording prior to the conversation is unknown and unnecessary to determine because of the district court's assumption.

reasonable risk of harm and the right and ability to control" the child's conduct. *Turpen v. Granieri*, 133 Idaho 244, 248, 985 P.2d 669, 673 (1999). However, Hensley's argument fails to take into account the child's interest in privacy and whether that interest is protected by the I.C.S.A.

Courts which have found that the doctrine of vicarious consent extends to the consent-exception have only extended it to situations where the parent acts in good faith and with an objectively reasonable belief that consent is necessary to fulfill statutory obligations which require a parent to act in the best interest of the child. See *Pollock v. Pollock*, 154 F.3d 601 (6th Cir.1998); *Thompson v. Dulaney*, 838 F.Supp. 1535 (D.Utah 1993). Again, this Court freely reviews whether the consent exception in the I.C.S.A. extends to situations where a parent vicariously consents on behalf of their child.

 Whether the district court erred in finding that no vicarious consent existed in this instance is a question of fact, which this Court will affirm unless it is clearly erroneous. The lower court evaluated the different tests from various jurisdictions, and ultimately found that Hensley did not meet the standards for vicarious consent. The court found that the Hensleys did not present testimony which would lead the court to believe that their actions were entirely grounded in J.H.'s best interest. Additionally, jurisdictions which have allowed a parent to vicariously consent on behalf of the child did so when the parent had an objective belief that the child was being abused, sexually, physically or emotionally. The court found that in the instant case, Hensley only had a belief that Tonya was "coercing" or "manipulating" J.H. and that Hensley and Starr had been involved in extensive family litigation over the custody of J.H. with Ms. Bingle. Ultimately, the court held that the Hensleys had not provided believable testimony that they were acting in good faith with J.H.'s best interest

in mind. We cannot say that the lower court's findings were not supported by substantial and competent evidence. The trial court heard the testimony of the parties and is in the best situation to determine their credibility.

Because we find no error in the lower court's determination, we decline to address the issue of whether a parent may ever vicariously consent to a recorded conversation, on behalf of the child, under the I.C.S.A. This Court declines to address whether a parent's interest in protecting his or her child will ever outweigh the child's interest in private telephone conversations.

**The exclusion of the evidence did not violate Hensley's Sixth Amendment right to cross-examine witnesses or his Fourteenth Amendment right to due process of law.**

 Hensley next argues that his Sixth Amendment right to cross-examine witnesses, as well as his Fourteenth Amendment right to due process of law were violated by excluding the recorded conversation from evidence. Hensley argues that by excluding the recorded conversation, he was unable to present a full and fair defense against the charges that were brought against him. As stated by the district court, this argument is unavailing. The district court found that Ms. Bingle was available to testify at trial, and that Hensley would have the opportunity to cross-examine her at that time. At trial, neither Hensley nor the State called Ms. Bingle to testify. Therefore, Hensley cannot argue on appeal that he was denied his right to a fair trial because he was unable to impeach Ms. Bingle with the recorded conversation. Hensley, in his appellate brief, argues that exclusion of the tape prevented him from impeaching J.H.[4] However, Hensley's attorney was afforded the option at trial to cross-examine J.H.; there-

4. The following is Hensley's cross examination of J.H. regarding the recorded conversation:

Q: Would your [J.H.] mom [Tonya Bingle] yell at you [while on the phone at Hensley's house].?
A: Sometimes.
Q: Sometimes. Did she get kind of foul language with you?
A: Yes.
Q: Call you bad words?
A: Yes.
Q: Vulgar words?
A: What's that?
Q: Swear words that you *should never say*?
A: Yes.

fore, Hensley was not deprived of his *Sixth* Amendment right to confront witnesses against him. Hensley makes no claim that J.H.'s testimony at trial was inconsistent with the information on the recorded conversation. The record reflects that Hensley brought out the substance of the recorded conversation through cross-examination of J.H. He never contended that during the cross-examination J.H. lied or that there was any need to impeach J.H. with the recorded conversation. Since a ruling on a motion in limine may be reconsidered by the court at any time, if Hensley believed it was necessary to impeach J.H. with the recorded conversation, he could have asked the court to review the matter and allow him to use the recording solely for impeachment purposes as opposed to introducing it in evidence as substantive evidence. The same can be said with respect to Ms. Bingle. Since Hensley never called Ms. Bingle as a witness no issue arose as to whether she would testify truthfully to the contents of the tape or risk impeachment with the tape if the court were asked to reconsider its ruling on the motion in limine.

] This Court finds that Hensley was not deprived of his right to a fair trial through the exclusion of the evidence. The evidence was obtained in violation of the I.C.S.A. and was deemed inadmissible by the trial court. A defendant does not have the right to present unlimited evidence in his defense. For example, there is no right to present irrelevant evidence, regardless if the defendant feels that it is necessary for his defense. *State v. Self*, 139 Idaho 718, 722, 85 P.3d 1117, 1121 (2004). Additionally, the trial court has broad discretion to limit cross-examination to prevent harassment, prejudice, confusion of the issues or if the testimony is only marginally relevant. *Self*, 139 Idaho at 722, 85 P.3d at 1121 (citing *Delaware v. VanArsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986)).

Because Hensley did not raise any need to impeach J.H. or Ms. Bingle with the tape, it cannot be said that Hensley was deprived of his right to a fair trial and denied the opportunity to cross-examine witnesses against him merely because the recorded conversation was excluded.

**This Court did not deny Hensley due process on appeal by denying Hensley's attorney's request to review the recorded conversation which was ordered sealed by the lower court.**

██ This Court did not deny Hensley his right to due process on appeal by denying Hensley's appellate counsel's request to review the recorded conversation. Regardless of the information contained on the tape, Hensley was unable to show any error in the failure to admit the recorded conversation at the trial. At no point in the trial transcript does either party make any reference to the information in the recorded conversation and the trial court did not base its decision on the information contained in the tape. Hensley was unable to show that the recorded conversation was necessary to prosecute or pursue this appeal.[5] Knowledge of the conversation does not make the tape any more or any less admissible under the I.C.S.A. Hensley is also unable to demonstrate that knowledge of the information on the tape would aid his counsel in appealing the trial court's evidentiary ruling. Hensley's due process rights were not violated because Hensley made no contention at trial that J.H. testified inconsistently. Therefore, the information in the recorded conversation is irrelevant to whether the trial court erred in excluding the recorded conversation. The plain meaning of the statute excludes the conversation and Hensley was unable to show that he met any of the exceptions to the statute.

5. Although it is unclear from the record whether Hensley's trial counsel had access to the tape, presumably because Hensley recorded the conversation (through Starr Hensley), Hensley had knowledge of the content of the tape and most likely shared the content and/or the tape with his trial counsel prior to turning the recorded conversation over to the Meridian police department. Hensley was indicted September of 2004, and the evidence was not sealed until August of 2005. The tape placed on seal is labeled as "Copy—recorded phone call between J.H. and Tonya Bingle—July 2004." The police records, where the conversations were dictated, are from September of 2004.

This Court affirms the trial court's decision which found that the recorded conversation was obtained in violation of the I.C.S.A. and was therefore inadmissible.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON concur.

