**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 36760**

| | |
|---|---|
| STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, | ) ) |
| Plaintiffs-Respondents, | ) Boise, June 2010 Term ) ) |
| v. | ) 2010 Opinion No. 78 ) |
| JANE DOE III, | ) Filed: July 6, 2010 ) |
| Defendant-Appellant. | ) Stephen W. Kenyon, Clerk ) ) |

Appeal from the Magistrate Court of the First Judicial District of the State of Idaho, Bonner County. Hon. Debra A. Heise, Magistrate Judge.

The decision of the magistrate court is affirmed.

Linda J. Payne, Coeur d'Alene, for appellant.

Margaret R. Williams, Ponderay, for CASA.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.

**SUBMITTED ON THE BRIEFS**

W. JONES, Justice

## I.      FACTS AND PROCEDURAL HISTORY

This case concerns the termination of parental rights of Jane Doe III (Doe). Doe is the biological mother of six children, five of whom are at issue in this proceeding. The children at issue are B.R., born 1999; K.R., born 2001; A.R., born 2002; D.R., born 2003; and M.K, born 2005. Doe's youngest child, J.K., is not part of this proceeding. The father of the four oldest children, B.R., K.R., A.R. and D.R., is Benjamin Ramirez (Ramirez), who consented to the termination of his parental rights and is not a party to this appeal. Parental rights of M.K.'s father, Anthony Cantelme (Cantelme), were terminated following the trial in the magistrate court, and he has not appealed. The father of J.K is Joshua Smalley (Smalley).

1

On January 17, 2006, four of Doe's children, B.R., K.R., A.R. and D.R., were removed from her custody and sheltered by the Idaho Department of Health & Welfare (the Department). A petition for legal custody was filed by the Department on January 19, 2006. A hearing before a magistrate court was held that same day, and the court entered an order of continuing shelter care and gave the Department legal custody of the children. Another hearing was held on February 15, 2006, and the court ordered that the children remain in the custody of the Department. The court also ordered that the parents and the Department develop a case plan to address the issues that led to custody by the Department so that the children may eventually be returned to their parents.

Doe and the Department formed a case plan for the reunification of Doe and her children. A case plan hearing was held on March 7, 2006, and the magistrate court entered an order approving and adopting the plan. Under the terms of the case plan, the children were to remain in the custody of the Department. Nevertheless, a review hearing was held on August 1, 2006, at which time the magistrate court ordered, with the recommendation of the Department, that custody of the children be returned to Doe. A written order was entered on August 16, 2006.

On November 1, 2006, the Department filed a petition for legal custody of five of Doe's children, B.R., K.R., A.R., D.R. and M.K. A hearing was held on November 28, 2006, and the magistrate court ordered that the Department have legal custody of the children. Also, the court ordered that the parents and the Department develop a new case plan.

Doe and the Department agreed upon a modified case plan. A hearing was held on December 20, 2006, and the magistrate court entered an order approving and adopting the plan. Under its terms, the children were to remain in the custody of the Department.

On March 6, 2008, the Department filed a motion to terminate the parental rights of the parents of B.R., K.R., A.R., D.R. and M.K. and vest legal custody of the children in the Department. Ramirez consented to the termination of his parental rights to B.R., K.R., A.R. and D.R., and the magistrate court entered an order terminating his rights. An amended petition was then filed on September, 18, 2008, for termination of parental rights of Doe to all five children and of Cantelme to M.K. Doe filed a motion to dismiss the petition. A trial was held for sixteen days between September 18, 2008, and February 19, 2009. On March 26, 2009, the magistrate court issued an order terminating the parental rights of Cantelme to his child M.K. and parental rights of Doe to B.R., K.R., A.R., D.R. and M.K.

Doe filed a notice of appeal on April 16, 2009, and then an amended notice of appeal on April 17, 2009, appealing from the order terminating her parental rights. Cantelme did not appeal.

## II.    ISSUES ON APPEAL

1. Whether there is substantial and competent evidence to support the finding of the magistrate court that Doe had neglected her children within the meaning of I.C. § 16-2002(3)(b).

2. Whether there is substantial and competent evidence to support the finding of the magistrate court that the Department had made a reasonable effort to reunify Doe with her children.

3. Whether there is substantial and competent evidence to support the finding of the magistrate court that Doe had neglected her children within the meaning of I.C. § 16-2002(3)(a).

4. Whether the magistrate court ignored relevant evidence in the record.

5. Whether there is substantial and competent evidence to support the finding of the magistrate court that Doe had been unable to discharge her parental responsibilities within the meaning of I.C. § 16-2005(1)(d).

## III.    STANDARD

Grounds for termination of parental rights must be based upon clear and convincing evidence. I.C. § 16-2009. A finding of the magistrate court will not be overturned on appeal unless it was clearly erroneous. *In Interest of Crum*, 111 Idaho 407, 408, 725 P.2d 112, 113 (1986). "Clear error, in turn, will not be deemed to exist where the findings are supported by substantial and competent, albeit conflicting, evidence." *Id.* (citing *Interest of Castro*, 102 Idaho 218, 221, 628 P.2d 1052, 1055 (1981); *Rhodes v. State Dep't of Health & Welfare*, 107 Idaho 1120, 1120, 695 P.2d 1259, 1259 (1985)).

## IV.    DECISION

The magistrate court terminated Doe's parental rights under I.C. § 16-2005(1)(b). Idaho Code § 16-2005 provides the conditions under which termination of parental rights may be granted:

> (1) The court may grant an order terminating the relationship where it finds that termination of parental rights is in the best interests of the child and that one (1) or more of the following conditions exist:
>
> . . . .
>
> (b) The parent has *neglected* or abused the child.

3

(emphasis added). The magistrate court found that termination of Doe's parental rights was in the best interest of the children. Also, the court found that Doe had "neglected" her children. "Neglected" is defined under I.C. § 16-2002(3) to mean:

> (a) Conduct as defined in section 16-1602(25), Idaho Code; or

> (b) The parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9), Idaho Code.

Idaho Code § 16-1629(9) specifies that the time standard for reunification is fifteen months out of the last twenty-two months from the date the child entered sheltered care.

The magistrate court found that under I.C. § 16-2002(3)(b), Doe had neglected her children because she had failed to comply with the case plan and because reunification had not occurred within the time limit imposed by I.C. § 16-1629(9). Additionally, the court found that Doe's conduct had amounted to neglect under I.C. § 16-1602(3)(a) because her conduct fit within the definition provided in I.C. § 16-1602(25).

**A.** **This Court affirms the finding of the magistrate court that Doe had neglected her children within the meaning of I.C. § 16-2002(3)(b) for her failure to comply with the case plan.**

Doe claims that the magistrate court erred when it found that she had failed to comply with the case plan.

The magistrate court relied upon its finding that Doe had failed to comply with the case plan as one of two grounds to terminate her parental rights. Under I.C. § 16-2005(1)(b), neglect is a ground for termination of parental rights. Idaho Code § 16-1602(3)(b) provides that neglect is established if the parent fails to comply with the case plan and reunification of the child with the parent does not occur within the time limit set by I.C. § 16-1629(9).

Doe and the Department agreed upon a case plan in March of 2006. The plan provided: "[Doe's] plan is to secure adequate housing and employment in the area to support the care for her children." In December of 2006, the parties agreed on an amended case plan. The plan provided:

> [Doe] will participate in counseling to discuss the cycle of abuse in her and her children's [sic] lives, and how her choices have been impacting her children emotionally and physically. [Doe] will follow her counselor's recommendations to effectively avoid violence or harmful relationships and keep her children and herself safe. [Doe] will complete a psychiatric evaluation and follow recommendations of evaluation.

4

[Doe] will not engage in relationships with other adults who have criminal histories involving violence, sexual abuse or substance abuse. She will provide a home for herself and her children that is free of domestic violence.

[Doe] will maintain safe, stable and adequate housing for a period of at least six months.

[Doe] will complete a Department approved parenting class and demonstrate her increased knowledge and ability to parent her children.

[Doe] will visit her children on a consistent basis as arranged with the DHW case manager.

The magistrate court found that Doe had failed to comply with a number of provisions in the case plan. The court found that Doe had failed to maintain safe, stable and adequate housing for six consecutive months and lacked safe and adequate housing at the time of the trial. The court found that Doe had failed to visit her children on a regular basis while they were in foster care. Doe's decision to live in western Washington, and then northern Idaho, the court found, had made it difficult for her to have meaningful visits with her children. The court found that she had not maintained a home free of domestic violence and that she had continued to engage in a relationship with Smalley, an adult who has a criminal history involving sexual abuse. Additionally, the court found that reunification had not occurred within the imposed time limit.

There is substantial and competent evidence to support the finding of the magistrate court that Doe had violated the terms of the case plan. First, there is sufficient evidence to support the finding of the magistrate court that Doe had engaged in a relationship with an adult who had a criminal history "involving violence, sexual abuse or substance abuse." Doe had an ongoing relationship with Smalley, a convicted sex offender. Additionally, there is sufficient evidence to support the finding of the magistrate court that Doe had failed to maintain stable and adequate housing for a six month period, as Doe has not stayed in one location for more than a few months at a time. Doe had to reside at motels and with friends and has faced apartment evictions. There is also evidence that Doe has not been able to provide a safe home, as Doe has invited criminals and chaos into her life.

This story of Doe's life begins around the time her children were returned to her in August of 2006, a few months after the terms of the initial case plan were agreed upon. Doe was residing in Sandpoint, Idaho when her children B.R., K.R., A.R. and D.R. were returned to her. While residing in Sandpoint, thirteen Law Enforcement Incident Reports were filed regarding activities at Doe's house. Among others, on June 23, 2006, Doe contacted law

enforcement to report that she and M.K. had been sprayed in the face with pepper spray by a man named Michael Plunk. Doe reported that Plunk had run across the yard yelling "you and your daughter are going to die bitch!" An incident report was filed on July 14, 2006, because Doe and a man had been yelling at each other. Also, a report was filed on August 8, 2006, because of intoxication at Doe's house.

Evidence shows that Doe continued to violate the terms of the case plan, as she continued to fail to provide safe and stable housing. Also, she carried on a relationship with an adult that has a criminal history involving sexual abuse. In early October of 2006, Doe was evicted from her home in Sandpoint. After leaving Sandpoint, Doe stayed with her children in motels in Coeur d'Alene, Idaho and Washington. A few weeks later, in the middle of October of 2006, Doe took her four oldest children to stay with her sister, Erin Kelly (Erin), in Arizona. Doe did not stay but instead took M.K. to live in Washington, leaving the other children in Arizona.

The Department filed a petition a few weeks later, on November 1, 2006, to obtain legal custody of Doe's children, including M.K., and the magistrate court granted custody to the Department. Around that time, Doe moved into the home of the mother of a childhood friend in Sedro-Woolley, Washington. There is evidence that Doe moved to the area to be close to Smalley. Doe stayed in Sedro-Woolley until early March of 2007, and was transient until September of 2007. During that time, Doe stayed at motels and with friends in Spokane, Washington and Coeur d'Alene. At the end of September of 2007, Doe moved to Post Falls, Idaho and resided in a complex named Chukar Street Apartments. Doe resided in Post Falls longer than any other location, staying for approximately nine months. Doe resided in Post Falls until she was evicted in late June or early July of 2008. Once again, Doe was transient; Doe was transient until September of 2008 when she moved to her current residence in Hayden, Idaho.

Additionally, there is substantial and competent evidence to support the finding of the magistrate court that Doe lacked adequate housing at the time of the trial. There is evidence that Doe was in financial trouble and was unable to pay her bills and that her utilities were in threat of being shut off. Moreover, there is evidence that Doe's home was not safe for children as her next-door neighbor was Smalley, a convicted sex offender. Expert testimony offered at trial indicated that Doe's children are not safe around Smalley.

There is sufficient evidence to support the finding of the magistrate court that Doe had violated the case plan by not providing "a home for herself and her children that is free of

6

domestic violence." A police report was lodged on September 4, 2008, by Doe alleging that her "boyfriend, . . . Smalley" had grabbed her by the hair and had thrown her to the ground. Doe suffered scratch marks on her neck.

Doe claims that the absolute ban on parental contact with J.K.'s father, Smalley, is entirely unreasonable. The case plan, however, simply prevented Doe from engaging "in *relationships* with other adults who have criminal histories involving violence, sexual abuse or substance abuse," which was what the court found. (emphasis added). The court found that Doe had violated the case plan by engaging in an ongoing "relationship" with Smalley. Additionally, the finding of the court that Doe had engaged in a relationship with Smalley, as written above, is supported by substantial and competent evidence.

Doe claims that the State interfered with her ability to maintain safe, stable and adequate housing. Doe resided in Post Falls at Chukar Street Apartments from September of 2007 until her eviction in June or July of 2008. There is evidence that Doe was evicted after a prosecuting attorney sent a letter to the resident manager of the complex informing her that Doe had provided false information on her housing application. The prosecutor might have made it difficult for Doe to maintain stable and adequate housing; nonetheless, there is evidence that Doe maintained a relationship with Smalley and that he visited her apartment regularly, making it unsafe for her children. The resident manager testified that Smalley had been at Doe's place two to four times a week and that Smalley was a familiar face around the apartment complex. Moreover, Doe would not have been evicted had she not provided false information on her application.

Because this Court affirms the finding of the magistrate court that Doe had neglected her children within the meaning of I.C. § 16-2002(3)(b) for her failure to comply with the case plan, this Court does not need to address whether Doe neglected her children within the meaning of I.C. § 16-2002(3)(a).

**B.    This Court affirms the finding of the magistrate court that the Department had made a reasonable effort to reunify Doe and her children.**

Doe claims that the magistrate court erred in finding that the Department had made a reasonable effort to reunify her with her children.

In order to terminate parental rights for failure to comply with a case plan, there must be a showing that reunification did not occur. Under I.C. § 16-2002(b)(3), neglect may be found if the parent fails to comply with the case plan and reunification did not occur for fifteen out of the

7

last twenty-one months. I.C. § 16-1692(9). In this case, the magistrate court terminated parental rights because it found that Doe had failed to comply with the case plan and because reunification had not occurred.

As an affirmative defense, Doe claimed that the Department had not made a reasonable effort to reunify her and her children. The magistrate court, however, found that the Department had made a reasonable effort. The court cited a number of reasons to support its finding. The court noted that the state had spent over $80,000 on counseling, gas vouchers, rental assistance and foster care. Additionally, the court cited Doe's own conduct as the main reason reunification had not occurred, including her inability to maintain residential and financial stability and her decision to move to a location that made regular contact with her children impossible. Doe now challenges the finding of the magistrate court.

This Court affirms the finding of the magistrate court, as there is substantial evidence to support the finding of the court that the Department had made a reasonable effort to reunify Doe with her children. The Department entered into two case plans with the primary purpose of reunification. The Department also scheduled weekly supervised visits and paid Doe's fuel expenses so that she could visit her children. The Department scheduled regular telephone calls between Doe and her children and paid for Doe's weekly therapy sessions. Moreover, the commitment of the Department to reunification was shown on August 1, 2006, when the Department recommended that the children be returned to Doe's custody.[1]

## C.   The magistrate court did not ignore relevant evidence in the record.

Doe claims that the magistrate court erred when it focused upon her distant past and dismissed evidence of her most recent accomplishments. Doe asserts that the opinion of the magistrate court pays little attention to her life the year before the termination proceeding began. Doe contends that she took a number of steps to comply with the case plan and regain custody of her children. Doe asserts that she moved back to Idaho, paid her rent on time and purchased a mobile home and that her counselor testified that she was making progress.

A trial court may not ignore relevant and admissible evidence the legislature has deemed relevant. *In re Adoption of Doe*, 143 Idaho 188, 192, 141 P.3d 1057, 1061 (2006). In *In re*

---

[1] The magistrate court ordered that custody of the children be returned to Doe, but a few months later, the court ordered that the children be returned to the custody of the Department.

*Adoption of Doe*, this Court found that the magistrate court had ignored relevant evidence because the court had not included it in its discussion. *Id.*

This Court finds that the magistrate court did not ignore relevant evidence. The opinion of the magistrate court contains a discussion of Doe's life in chronological order starting with her birth and continuing to the date of the trial. Moreover, the magistrate court discussed each fact Doe claims it ignored. The magistrate court discussed Doe's decision to move back to Idaho in September of 2007. The court wrote:

> [Doe] claims that this [c]ourt's comments motivated or compelled her to move back to Idaho may have some merit, but it is not lost on this [c]ourt that Joshua Smalley testified that he returned to Idaho *before* because he was causing "too much trouble" for her in the State of Washington. In any event, both [Doe] and Joshua ended up first in Spokane, Washington, and then Post Falls, Idaho, where [Doe] remained almost a year. Post Falls is at least a 2-hour drive from Bonners Ferry, Idaho, where [Doe's] children were living.

The magistrate court took note of the fact that Doe had paid her rent on time. The court discussed the fact that Doe had only one police contact while living in Post Falls. The court acknowledged the reason Doe had been evicted from her apartment in Post Falls; the court discussed the fact that Doe had been evicted because a prosecuting attorney had sent a letter to the resident manager of Doe's apartment complex informing her that Doe had provided false information on her housing application. Additionally, the court discussed the fact that Doe's counselor had testified that Doe had been making progress.

**D. The magistrate court did not rely upon I.C. § 16-2005(1)(d) to terminate Doe's parental rights.**

Doe claims that the magistrate court erred when it terminated her parental rights under I.C. § 16-2005(1)(d)[2] because the court failed to make one of the three requisite findings; Doe contends that the court failed to find that her inability to discharge parental responsibilities was "injurious to the health, morals or well-being of the child."

---

[2] Idaho Code § 16-2005 provides:

> (1) The court may grant an order terminating the relationship where it finds that termination of parental rights is in the best interests of the child and that one (1) or more of the following conditions exist:
>
> . . . .
>
> (d) The parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child.

Doe has misstated the grounds the magistrate court relied upon to terminate Doe's parental rights. The Department asserted I.C. § 16-2005(1)(d) as a ground to terminate parental rights. The court, however, never reached that claim because it terminated Doe's parental rights on an alternative ground, I.C. § 16-2005(1)(b).

## V.    CONCLUSION

For the foregoing reasons, this Court affirms the finding of the magistrate court that Doe had neglected her children within the meaning of I.C. § 16-2002(3)(b). This Court affirms the finding of the magistrate court that the Department had made a reasonable effort to reunify Doe and her children. This Court finds that the magistrate court did not ignore relevant evidence in the record. Costs to Respondent.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON **CONCUR.**