# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48662

| | | |
|---|---|---|
| In the Matter of: | ) | |
| Jane Doe I and Jane Doe II, Children | ) | |
| Under Eighteen (18) Years of Age. | ) | |
| STATE OF IDAHO, DEPARTMENT OF | ) | |
| HEALTH AND WELFARE, | ) | Filed: July 13, 2021 |
| | ) | |
| Petitioner-Respondent, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| v. | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| JANE DOE (2021-08), | ) | BE CITED AS AUTHORITY |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. A. Lynne Krogh, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Aaron Bazzoli, Canyon County Public Defender; Alex W. Brockman, Deputy Public Defender, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John T. Spalding, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the judgment terminating her parental rights to her two minor children. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2019, Mother's older child reported that Mother had drugs in their home and that Mother physically abused the younger child. The younger child confirmed this abuse. Law enforcement searched the home and found several baggies of methamphetamine and drug paraphernalia and that the home was covered in trash and animal feces and lacked a bed for the

1

children. The children were declared in imminent danger, and Mother was charged with misdemeanor injury to a child and felony possession of a controlled substance. After law enforcement removed the children, both of the children tested positive for methamphetamine. Mother eventually pled guilty to the misdemeanor injury to a child and to felony possession of a controlled substance.

The Idaho Department of Health and Welfare filed a petition under the Child Protective Act (CPA), Idaho Code §§ 16-1601-1647, to obtain custody of the children. At an adjudicatory hearing in February 2019, Mother stipulated to the magistrate court's jurisdiction, and the court ordered the children into the Department's custody. In April 2019, the magistrate court approved a case plan identifying tasks for Mother to perform. These tasks included, among other things, that Mother must maintain a safe and stable home; maintain sufficient income to provide for her family's needs; complete a psychological evaluation and comply with any resulting recommendations; complete a drug and alcohol assessment, comply with any treatment recommendations, abstain from using any illegal substances, and comply with requests for random drug testing; complete a protective parenting class; ensure the children receive the necessary services for their physical, developmental, and mental health; and attend all the scheduled visitation with the children.

In January 2020, the magistrate court changed the permanency goal from reunification to termination but maintained a secondary goal of reunification. In March 2020, the Department filed a petition to terminate Mother's parental rights, alleging she had failed to comply with her case plan. In August 2020, the magistrate court held a hearing at which it addressed concerns about Mother's hair follicle test showing positive for methamphetamine in July 2020[1] and her request for family counseling to address her poor relationship with the children. At the conclusion of the hearing, the court adopted an amended case plan identifying tasks for Mother to perform related to these and other issues.

The magistrate court held a three-day termination trial in November and December 2020. Numerous witnesses testified at the trial including a Department safety assessor, several Department case managers, several visitation supervisors, Mother's counselors, a private forensic consultant, a psychologist who evaluated Mother, and Mother. In January 2021, the

---

[1] Mother contested this positive result in July 2020, but another hair follicle test in August 2020 also tested positive for methamphetamine and amphetamine.

court entered its written findings and conclusions terminating Mother's parental rights. The court concluded that Mother neglected the children by failing to comply with her case plan and that termination of her parental rights is in the children's best interests.

Mother timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006).

Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141

P.3d 1057, 1060 (2006). "When deciding whether findings are clearly erroneous, [the appellate] Court does not substitute its view of the facts for that of the trial court. It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses." *In re Doe*, 152 Idaho 910, 913, 277 P.3d 357, 360 (2012) (citation omitted).

## III.

## ANALYSIS

### A. Neglect

On appeal, Mother does not dispute the magistrate court's conclusion that she failed to comply with her case plan. Instead, Mother argues substantial compliance with her case plan was not possible. Mother asserted the affirmative defense of impossibility, and impossibility may be a defense for failing to comply with a case plan's requirements. *See, e.g.*, *Idaho Dep't of Health & Welfare v. Doe (2016-14)*, 161 Idaho 596, 600, 389 P.3d 141, 145 (2016) ("[I]mpossibility may be asserted as a defense to a claim of neglect founded upon failure to comply with the requirements of a case plan.").

Regarding Mother's affirmative defense of impossibility, the magistrate court found that "it has not been asserted that compliance with the substance abuse portions of the case plan was impossible. Indeed, [Mother's] success during the winter of 2019 and spring of 2020 demonstrates that compliance was not impossible." Mother does not directly dispute this finding. Nevertheless, she argues a disability prevented her from complying with the requirements in her case plan, including that she take random drug tests and maintain sobriety. Specifically, Mother notes that she "had a low IQ test of 70" indicating "an intellectual impairment" rising to the level of a disability. She contends that because of this intellectual disability, she did not understand the drug testing protocol; she "struggled with the necessary skills needed to make arrangements for transportation to drug testing"; "she was around people who were actively using [methamphetamine] but did not understand the obvious signs of drug use"; and her relapse "was all but inevitable because of her intellectual impairment."

We are not persuaded by Mother's argument. Substantial and competent evidence supports the magistrate court's finding that Mother "failed to comply with [the] case plan requirements regarding substance abuse, substance abuse treatment, and substance abuse testing" and that despite her initial success at maintaining sobriety, there is "a clear pattern of relapse." This evidence includes that Mother repeatedly tested positive for methamphetamine. For

4

example, Mother admitted she used methamphetamine in October 2019, and the record shows she tested positive for methamphetamine in May 2019, in early 2020, in July 2020, in August 2020, in September 2020, and again in October 2020. Further, the evidence shows Mother repeatedly failed to appear for drug testing and was calling one testing company to learn whether she was required to test but then showing up (if at all) at a different testing company for the test. Although Mother has numerous excuses for this manner of proceeding with the case plan's random testing requirement, she cannot point to any evidence other than her own testimony that the Department approved of her haphazard approach to testing. Finally, Mother failed to appear for a GAIN assessment in August and again in October 2020 and did not obtain an assessment until shortly before the termination trial in November 2020. By finding Mother missed these scheduled appointments, the magistrate court implicitly rejected her proffered excuses for her failures.

Substantial and competent evidence also supports the magistrate court's conclusion that Mother was capable of complying with the case plan. As the magistrate court correctly noted, Mother's success in complying with the case plan during the winter of 2019 and spring of 2020, demonstrates her compliance was not impossible. For example, Mother received a certification of completion of a drug treatment program in May 2020 before she relapsed in July 2020. Additionally, Mother maintained full-time employment during the course of her case plan. Also, several witnesses who worked with Mother during the course of her case plan testified that she did not appear to have any cognitive impairment precluding her from performing her case plan.

Mother cites no legal authority to support her argument that an "intellectual impairment" may excuse her failures to fulfill the case plan tasks requiring her to maintain her sobriety. Moreover, Mother's arguments essentially request this Court to reweigh the evidence. For example, she argues the testimony of the psychologist who evaluated her in November 2020 supports her contention that she is incapable of performing her case plan due to an "intellectual impairment." The psychologist's testimony about Mother's IQ test results, however, is more equivocal than Mother portrays it. As the magistrate court correctly found, the psychologist's conclusions were only that Mother "may" experience "thinking and reasoning" deficits but that other factors unrelated to her intellectual ability, such as cultural bias, language barriers, and depression, "may" account for her low IQ test results. Further, Mother relies on her own

5

testimony to support her argument that she is intellectually incapable of maintain her sobriety. The magistrate court, however, found Mother's testimony was not credible.

As set forth above, however, we will not set aside the magistrate court's factual findings on appeal unless they are clearly erroneous. *See In re Doe*, 152 Idaho at 913, 277 P.3d at 360 (ruling court will not substitute view of facts, weigh conflicting evidence, or judge credibility). The magistrate court's province is to weigh conflicting evidence and to judge the witnesses' credibility. *Id.* In determining whether factual findings are clearly erroneous, this Court does not substitute its view of the facts for the magistrate court's view. *Id.* Rather, this Court reviews the record to determine if substantial and competent evidence supports the factual findings. *Id.* Additionally, "[i]f the trial court's findings of fact are based upon substantial and competent, although conflicting evidence, they should not be disturbed on appeal." *Doe I v. Doe*, 138 Idaho 893, 906, 71 P.3d 1040, 1053 (2003). Accordingly, we decline to reweigh the evidence in this case, and we rule that the magistrate court did not err by concluding Mother neglected the children by failing to comply with her case plan.

## B. Children's Best Interests

Mother also challenges the magistrate court's conclusion that the termination of her parental rights is in the children's best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Mother argues the magistrate court erred by concluding that the termination of her parental rights is in the children's best interests because "the Department did not provide the

necessary services to effectuate reunification by allowing the foster-pare[nt] to alienate the children" and did not "submit the referral necessary for the psychological evaluation until October 2020." This argument ignores the magistrate court's primary finding regarding the children's best interests; namely, it found that Mother's methamphetamine use "is a major safety issue" impeding her "progress on visitation and reunification" and impairing her "ability to safely parent her children on a full-time basis." As a result, the court further found that "the earlier provision of other services" would not have impacted the outcome of reunification.

Contrary to Mother's arguments, substantial and competent evidence supports the magistrate court's conclusion that the termination of her parental rights is in the children's best interest. As noted above, the evidence shows Mother missed earlier scheduled evaluations in August and October 2020 and was testing positive for methamphetamine during the case's pendency, including as recently as October 2020. Further, the evidence shows that the foster parents are meeting the children's needs and that the children are bonded with them and meeting developmental goals. Several Department employees testified that the termination of parental rights is in the children's best interests. Also, the psychologist who evaluated Mother in November 2020 testified that she acknowledged she was not ready "to take care over the children right now." Accordingly, we rule that the magistrate court did not err by concluding termination of Mother's parental rights is in the children's best interests.

## C.     Reasonable Efforts to Reunify

Mother also argues that "the Department failed to provide services that reasonably effectuate reunification." Again, Mother points to the Department's alleged failures to provide "necessary services" to remedy the children's alienation and to submit a referral for a psychological evaluation until October 2020. Mother, however, acknowledges that the Department did not have to prove it made reasonable efforts to provide reunification services and that the Idaho Supreme Court has held that "while a finding of reasonable reunification efforts is required throughout the child protective action under the [CPA], it is not required to terminate parental rights." *Idaho Dep't of Health & Welfare v. Doe (2016-11)*, 160 Idaho 824, 834, 379 P.3d 1094, 1104 (2016).

Nevertheless, Mother argues the Idaho Supreme Court "has recognized the possibility of raising the lack of reasonable efforts as an affirmative defense" in *State, Dep't of Health & Welfare v. Doe*, 149 Idaho 409, 413-14, 234 P.3d 733, 737-38 (2010), in which the Court

7

affirmed the magistrate court's finding that the Department had made reasonable efforts to reunify the parent with the children.[2] The Court, however, has characterized that case and others as indulging the argument that the Department failed to ensure reasonable reunification efforts only "after articulating that they are not pertinent to the termination of parental rights." *Idaho Dep't of Health & Welfare v. Doe*, 164 Idaho 883, 889-90, 436 P.3d 1232, 1238-39 (2019) (listing previous cases discussing whether reunification efforts are relevant to the termination of parental rights). Because the Department's efforts to reunify Mother with the children are not relevant to the termination of parental rights, we decline to address this issue on appeal.

## IV.
## CONCLUSION

Substantial and competent evidence supports the magistrate court's conclusion that Mother neglected the children by failing to perform her case plan. Further, substantial and competent evidence supports the court's conclusion that the termination of Mother's parental rights is in the children's best interests. Accordingly, we affirm the judgment terminating Mother's parental rights.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.

---

[2] Mother also relies on and cites to a dissent in an unpublished opinion issued by this Court in 2010 to support her argument that the Department's lack of reasonable efforts to reunify her with the children is a viable affirmative defense. Counsel is reminded, however, that this Court will not consider unpublished authority except to the extent required by res judicata, collateral estoppel, the law of the case doctrine, or other similar legal principles.