# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46020

| | | |
|---|---|---|
| In the Interest of:  JANE DOE, | ) | |
| A Child Under Eighteen (18) Years of Age. | ) | |
| ------------------------------------------------------- | ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) | Boise, September 2018 Term |
| | ) | |
| | ) | Filed: September 14, 2018 |
| Petitioner-Respondent, | ) | |
| | ) | Karel A. Lehrman, Clerk |
| v. | ) | |
| | ) | |
| JANE DOE (2018-24), | ) | |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Andrew Ellis, Magistrate Judge.

The decision of the Magistrate Court is affirmed.

Anthony R. Geddes, Ada County Public Defender, Boise, attorneys for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorneys for respondent.

---

BEVAN, Justice

## I. NATURE OF THE CASE

Jane Doe (2018-24) ("Mother") appeals a magistrate court's decision to terminate her parental rights over her daughter ("K.O.") on the grounds of neglect after finding it was in K.O.'s best interest. On appeal Mother contests the magistrate court's findings that (1) early permanency for K.O. was appropriate and a continuance of trial was not warranted; and (2) that mother neglected K.O. and it was in the best interest of K.O. to terminate Mother's rights. We affirm the magistrate court's termination of parental rights because the court did not abuse its discretion in failing to continue the trial. Additionally, substantial and competent evidence, to a

1

clear and convincing standard, supported the magistrate court's decision that Mother neglected K.O. and it was in K.O.'s best interest to terminate Mother's parental rights.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 27, 2017, the Idaho Department of Health and Welfare ("Department") removed K.O.'s younger brother, S.O., from Mother's custody after the Boise Police Department declared S.O. was in imminent danger. S.O. was born showing signs of withdrawal from narcotics and Mother admitted to using heroin, methamphetamine and oxycontin while pregnant. The court conducted a shelter care hearing and awarded temporary legal custody of S.O. to the Department. On May 26, 2017, the court entered default after Mother failed to appear for a hearing. On June 15, 2017, the court awarded the Department legal custody of S.O. The court also approved and ordered a case plan for Mother which required her to: (1) address and show the ability to meet her child's basic needs including medical, dental, developmental, emotional, food and clothing; (2) maintain adequate income and housing to ensure a safe and stable environment; (3) maintain regular contact with her child; (4) attend parenting education classes; (5) engage in concurrent planning; (6) participate in substance abuse treatment and testing; and (7) participate in mental health treatment.

In August 2017, the social worker for S.O. received information that K.O. was in Idaho visiting S.O. in foster care. On August 4, 2017, the Department filed an amended petition to add K.O., who had been residing in Oregon, to S.O.'s existing Idaho child protection case. The magistrate court signed an order and removed K.O. from Mother's custody to place her into foster care with S.O. in Idaho. After a shelter care hearing the court awarded temporary legal custody of K.O. to the Department. On September 8, 2017, the court entered default after Mother failed to appear at a hearing and awarded the Department legal custody of K.O. On October 3, 2017, the court approved a case plan regarding K.O. for Mother that was substantially identical to the case plan ordered for S.O. on June 15, 2017.

On February 2, 2018, the court held a six-month review hearing for K.O. and, over Mother's objection, granted the Department's motion to address early permanency for both children. The goal of permanency planning is to provide a child with a lifetime connection to a family; thus, the Department's request for early permanence in this case sought to limit the amount of time K.O. and S.O. would remain in foster care and move expeditiously towards a

2

permanent placement. On February 20, 2018, the court conducted a hearing to address early permanency and approved the termination of parental rights as the permanent plan.

On March 1, 2018, the Department petitioned for termination of the parent-child relationship for both S.O. and K.O. On April 10, 2018, Mother withdrew her answer as to S.O., but requested a trial on the petition for K.O. On April 14, 2018, Mother moved to continue the termination trial or in the alternative to allow Mother's video testimony because she was incarcerated in Oregon. The magistrate court denied the request to continue the trial but granted mother's request to appear by video if all the parties would sign a stipulation to allow her testimony. On April 23, 2018, the parties stipulated to allowing Mother to testify by video and the court issued an order permitting her video testimony at trial. A contested termination trial was held on April 23, 2018, and May 9, 2018. On May 24, 2018, the court terminated Mother's parental rights. Mother timely appealed the termination of her rights as to K.O.

## III. ISSUES ON APPEAL

1.   Whether the magistrate court erred by granting early permanency and denying Mother's request for a continuance of the trial.

2.   Whether there is substantial and competent evidence to support the magistrate court's decision that Mother neglected K.O. and it was in K.O.'s best interest to terminate Mother's parental rights.

## IV. STANDARD OF REVIEW

"The United States Supreme Court has held that a parent has a fundamental liberty interest in maintaining a relationship with his or her child." *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002) (citing *Quilloin v. Walcott*, 434 U.S. 246 (1978)). The State of Idaho has also recognized the importance of the family relationship: "Implicit in [the Termination of Parent and Child Relationship] act is the philosophy that wherever possible family life should be strengthened and preserved...." *In re Doe*, 146 Idaho 759, 761, 203 P.3d 689, 691 (2009) (citing I.C. § 16-2001). Thus, "the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship." *Id.* (citing *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006)). Accordingly, a trial court's decision to terminate parental rights must be based on clear and convincing evidence. I.C. § 16-2009.

> In an action to terminate parental rights, where the trial court has explicitly determined the case by application of the clear and convincing evidentiary standard, this Court must determine if the decision was supported by substantial and competent evidence. *State v. Doe*, 144 Idaho 534, 535, 164 P.3d 814, 815

3

(2007) (citing *CASI Found., Inc. v. Doe*, 142 Idaho 397, 399, 128 P.3d 934, 936 (2006)). "Substantial competent evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Doe*, 143 Idaho 343, 345–46, 144 P.3d 597, 599–600 (2006) (quoting *Folks v. Moscow Sch. Dist. No. 281*, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997)).

*In re Doe*, 146 Idaho at 761, 203 P.3d at 691.

An appellate court will not set aside a magistrate's factual findings so long as they are supported by substantial, competent evidence. *In re Doe (2013-29)*, 156 Idaho 682, 687, 330 P.3d 1040, 1045 (2014). "Substantial competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Doe v. Doe*, 148 Idaho 243, 245, 220 P.3d 1062, 1064 (2009) (internal quotation omitted). "[T]his Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated." *Id.* at 245–46, 220 P.3d 1064–65 (internal quotations omitted).

A trial court's decision to grant or deny a continuance will not be overturned unless the decision was an abuse of discretion. *Estate of Ekic v. Geico Indem. Co.*, 163 Idaho 895, 897, 422 P.3d 1101, 1103 (2018). When determining whether a decision represents an abuse of discretion, this Court examines "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## V. ANALYSIS

### A. The magistrate court did not err by granting early permanency and denying Mother's request to continue the trial.

Mother argues that the magistrate court erred by: (1) granting early permanency because Mother was not given a reasonable amount of time to comply with her case plan; and (2) denying Mother's request to continue the trial because it deprived her of the possibility of appearing in person at trial.

Once a child has been placed in the legal custody of the State, the Department must make reasonable efforts to reunify children with their parents if there are no aggravating circumstances. I.C. § 16-1621. Courts are required to hold a hearing for the child's case and permanency plan no later than six months after entry of the court's order taking jurisdiction and

4

every six months thereafter. I.C. § 16-1622(1)(a). Further, "[a] permanency hearing shall be held no later than twelve (12) months from the date the child is removed from the home or the date of the court's order taking jurisdiction under this chapter, whichever occurs first, and at least every twelve (12) months thereafter, so long as the court has jurisdiction over the child." I.C. § 16-1622(2)(b). Idaho's courts have not clearly defined what constitutes a reasonable amount of time to reunify a parent with a child other than: (1) the requirement that a permanency hearing be held no later than a year from the date the child is removed; and (2) the mandate that the Department petition for termination of parental rights no later than the last day of the fifteenth month after a child has been in the custody of the Department. I.C. § 16-1622(2)(g).

Mother claims that the magistrate court erred by granting early permanency before she had a full year to comply with her case plan because it was "next to impossible" to work her case plan in six months because of her incarceration and Oregon residency. Even so, Mother was first ordered to participate in services in June 2017, when she received a case plan for S.O. While K.O. did not come into the Department's care until August 2017, the case plan and the services ordered were substantially similar to those Mother was previously ordered to comply with for S.O. Thus, Mother's argument that she only had six months to participate in services is incorrect. Further, the magistrate court found that as of February 2018, Mother had not complied with any prescribed treatment, she had obtained multiple new criminal charges, and when she was not in the State's custody she had not done anything to establish she would be in a place to safely parent the children. The magistrate court determined that based on Mother's lack of progress and failure to comply with the case plan, nothing was going to change significantly; thus, there was no reason to make the children wait for permanency. There is no requirement that Mother should have been provided a year to comply with her case plan. Instead, Idaho law requires permanency hearings be held *no later than* a year from the date the child is removed from the home or the court's order taking jurisdiction. I.C. § 16-1622(2)(b) (emphasis added). We hold the magistrate court did not err in granting early permanency after finding Mother failed to make any significant changes in her circumstances in eight months.

Mother also argues that the magistrate court erred by denying her request to continue the trial. This was a discretionary decision on the magistrate's part. However, Mother provides no argument or authority to show how the magistrate court abused its discretion. "Even in an appeal from the termination of parental rights, we will not consider an issue which is not supported by

5

cogent argument and authority." *In re Doe (2013-15)*, 156 Idaho 103, 109, 320 P.3d 1262, 1268 (2014) (internal quotation omitted).

**B.      Substantial and competent evidence supports the magistrate court's finding that Mother neglected K.O. and it was in K.O.'s best interest for Mother's parental rights to be terminated.**

Next Mother argues that the magistrate court erred in finding she neglected K.O. because evidence presented at trial supported a finding that a substantial relationship exists between Mother and K.O. Specifically, Mother alleged that her own testimony and that of K.O.'s maternal grandmother established, although disputed by the State's witnesses, that Mother provided and cared for K.O. for most of K.O.'s life prior to her removal and that Mother had a strong bond and attachment with K.O.

"It is axiomatic that preservation of the family unit is a right protected by the due process clause of the Fourteenth Amendment to the United States Constitution, and that a parent has a fundamental liberty interest in maintaining a familial relationship with his or her child." *In Interest of Baby Doe*, 130 Idaho 47, 50, 936 P.2d 690, 693 (Ct. App. 1997) (citing *Quilloin v. Walcott*, 434 U.S. 246 (1978)). "It is well settled that, in a proceeding to terminate a parent-child relationship, the due process clause mandates that the grounds for termination must be shown by clear and convincing evidence." *Doe v. Dep't of Health & Welfare, Human Servs. Div.*, 141 Idaho 511, 513, 112 P.3d 799, 801 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Idaho Code section 16-2005(1) provides that termination of parental rights may be granted if it is in the best interest of the child, and if one or more of the statutory conditions for termination exist. Idaho Code section 16-2005(1)(b) provides that it is a condition to terminate parental rights where "the parent has neglected or abused the child." Idaho Code section 16-1602(31)(a) defines a child being "neglected" as one:

> Who is without proper parental care and control, or subsistence, education, medical or other care and control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide for them . . . .

I.C. § 16-1602(31)(a).

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Doe (2013-15)*, 156 Idaho at 111, 320 P.3d at 1270. When considering the best interests of the child, a trial court may consider several factors:

6

When determining whether termination is in the child's best interests the trial court may consider the stability and permanency of the home, unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, improvement of child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law.

*Id*. The best interest analysis considers the reality that children need "stability and certainty." *Id*. at 112, 320 P.3d at 1271.

Here, the magistrate court terminated Mother's parental rights on the basis of neglect. Mother argues that K.O. was not neglected because Mother and the maternal grandmother's testimony at trial, "although disputed by the State's witnesses" showed that Mother provided and cared for K.O., and had loved and bonded to her. That said, this Court cannot reweigh the evidence on appeal; instead, we "defer to the trial court's unique ability to 'accurately weigh the evidence and judge the demeanor of the witnesses' and take into account the trial court's 'superior view of the entire situation.'" *Doe*, 148 Idaho at 246, 220 P.3d at 1065 (quoting *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007)). The magistrate court considered Mother and the maternal grandmother's testimony, but found that the evidence supported a finding that Mother had neglected K.O. Specifically, the magistrate court found the Department had proven by clear and convincing evidence that

> [Mother] has abused methamphetamine, marijuana and alcohol since age eighteen (18) and prescription opiates and heroin since 2014. This substance abuse, coupled with her untreated Bi-Polar Disorder, Post-Traumatic Stress Disorder, Attention Deficit Hyperactivity Disorder, and Depression, has resulted in chronic homelessness, unemployment, and incarceration. [Mother]'s testimony notwithstanding, this court concludes that [Mother] has never consistently provided for [K.O.]'s basic needs, but rather depended on [maternal grandmother] and [paternal grandfather] to provide food, transportation, medical care, shelter and child-care for the child. [Mother]'s on-going substance abuse while pregnant with [S.O.] resulted in his immediate removal into foster care at his birth, and [Mother] has never regained care of him. [Mother]'s substance abuse and mental health concerns are so profound that they make it impossible for [Mother] to provide a safe, secure and stable home environment for her children. Sadly, the court does not see that [Mother] will be able to address her addictions, mental health concerns, and criminal thinking at any point during [S.O.] and [K.O.]'s minority.

After finding that K.O. had been neglected, the magistrate court determined that it was in K.O.'s best interests to terminate Mother's parental rights. Specifically, Mother's chronic and untreated substance abuse and mental health concerns impaired her ability to provide a stable,

consistent home for K.O. Since K.O.'s birth, Mother had been homeless or incarcerated. Mother had continuously been offered substance abuse treatment but continued to use methamphetamine, marijuana, and opiates and was discharged from treatment twice for noncompliance. Mother's addiction resulted in frequent incarcerations which made it difficult to maintain housing and employment. The magistrate court also highlighted that K.O. would require special developmental, social, and medical needs. Specifically, K.O.'s foster parent testified that when K.O. entered her care she did not talk very much, she was withdrawn, appeared depressed, and lacked social interaction. K.O. ate off the floor, out of the trashcan, and would overindulge in food. The court attributed several of K.O.'s abnormal behaviors upon entry into foster care to her chaotic home life and the neglect Mother subjected K.O. to during her first years of life. The foster mother testified that K.O. had progressed in foster care and was doing well. We hold that substantial and competent evidence, to a clear and convincing standard, supported the magistrate court's decision that Mother neglected K.O. and it was in K.O.'s best interest to terminate Mother's parental rights.

## VI. CONCLUSION

The magistrate court's termination of Mother's parental rights to K.O. is affirmed.

Chief Justice BURDICK, Justices HORTON, BRODY and STEGNER, CONCUR