# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48372

| | | |
|---|---|---|
| In the Interest of: Jane Doe I and John Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) | Filed: January 26, 2021 |
| | ) | |
| Petitioner-Respondent, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| v. | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| JOHN DOE, | ) | BE CITED AS AUTHORITY |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Andrew Ellis, Magistrate.

Order terminating parental rights, affirmed.

Paul R. Taber, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John R. Shackelford, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

John Doe appeals from the magistrate court's judgment terminating his parental rights. John Doe argues the court erred by denying his motion to continue, finding that he neglected his children, and finding that it is in the children's best interests to terminate his parental rights. Because the magistrate court did not err in denying John Doe's motion to continue and because the record contains substantial and competent evidence to support the magistrate court's finding that John Doe neglected his children and that terminating his parental rights is in the best interests of the children, the magistrate court's judgment terminating John Doe's parental rights is affirmed.

# I.
## FACTUAL AND PROCEDURAL BACKGROUN

John Doe is the father of S.C. and O.C.  At the time of trial, he was married to Jane Doe, the children's mother.  In May 2019, Jane Doe left S.C. unattended in a bathtub filled with approximately six inches of water.  John Doe was at the home and aware that Jane Doe had left S.C. in the bathtub, but presumed that several other adults present in the home would check on S.C.  After S.C. had been left unattended in the bathtub for about thirty minutes, a toddler alerted the adults that S.C. was submerged underwater and unresponsive.  Another adult pulled S.C. from the water, paramedics were called to the home, and S.C. was taken to an intensive care unit at a local hospital where she ultimately recovered.  S.C. was placed in the temporary custody of the Department of Health and Welfare (Department) and thereafter, placed in foster care.  Jane Doe was placed under arrest for felony injury to child, but John Doe was not charged.

Relevant to John Doe's case are facts involving Jane Doe as follows:  Approximately one month after being taken into custody, Jane Doe was transported from jail to the local hospital where she gave birth to O.C., John Doe's child.  O.C. was born with significant medical issues.  O.C. was placed in the temporary custody of the Department and thereafter, was placed in foster care.  After an adjudicatory hearing, the magistrate court awarded custody of S.C. and O.C. to the Department and approved case plans for both parents.  Jane Doe pleaded guilty to one count of felony injury to a child, and the district court issued a no contact order (NCO) prohibiting Jane Doe from having contact with any minor child, including S.C. and O.C., until January 2030, except for supervised visits at the Department.

The Department petitioned to terminate Jane and John Doe's parental rights and a termination trial was held.  At the beginning of the termination trial, John Doe filed a motion to continue the trial, which was denied.  Following the trial, the magistrate court found by clear and convincing evidence that John Doe neglected his children and that termination of his parental rights is in the best interests of the children.  John Doe timely appeals.

# II.
## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Doe v. Doe*, 148 Idaho 243,

245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

John Doe argues the magistrate court's decision to terminate his parental rights should be reversed. John Doe claims the magistrate court erred in denying his motion to continue. John Doe also asserts that the magistrate court erred when it found that he neglected his children and that it is in the children's best interests to terminate his parental rights.

### A.     The Magistrate Court Did Not Err in Denying the Motion to Continue

Preliminarily, the Court notes that the appellant's brief is woefully inadequate, with the argument section consisting of three paragraphs, and the claims made within those paragraphs unsupported by citation to the record, authority, or cogent argument. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). Although many of the arguments are waived on appeal, the Court will nonetheless address the claims on the merits.

John Doe asserts the magistrate court erred in denying his motion to continue the trial terminating his parental rights. A motion for a continuance is addressed to the sound discretion of the trial court and will not be overturned on appeal absent a showing of abuse of that discretion. *Dep't of Health & Welfare v. Altman*, 122 Idaho 1004, 1009, 842 P.2d 683, 688 (1992); *Krepcik v. Tippett*, 109 Idaho 696, 699, 710 P.2d 606, 609 (Ct. App. 1985). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court:   (1) correctly perceived the issue as one of

3

discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

John Doe does not provide any argument or authority to support his argument that the magistrate court abused its discretion in denying his motion for a continuance. Further, the appellate record on appeal is inadequate as a transcript of the motion hearing is not included. Missing portions of a record on appeal are presumed to support the actions of the district court. *Rencher/Sundown LLC v. Pearson*, 165 Idaho 877, 881, 454 P.3d 519, 523 (2019). While the court minutes from the motion hearing are included in the record, they do not contain sufficient information for this Court to conclude the magistrate court abused its discretion in denying the motion. The minutes indicate that the magistrate court explained it was denying the motion because it did not find John Doe's arguments in support of the motion compelling. The magistrate court went on to explain why it did not find John Doe's arguments compelling, but those reasons are not detailed in the minutes. It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *Powell v. Sellers*, 130 Idaho 122, 127, 937 P.2d 434, 439 (Ct. App. 1997). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id*.

The claim also fails on the merits because John Doe has not established he was prejudiced by the denial. *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 425, 95 P.3d 34, 43 (2004) (requiring showing that denial of motion to continue prejudiced substantial rights). John Doe speculates that had the motion been granted, and had the coronavirus pandemic not occurred, he might have been able to complete his case plan. This ignores the fact that the magistrate court looked at John Doe's lack of progress on his case plan before services were limited due to the pandemic. In the nine months prior to any limitation of services, John Doe had not made substantial progress on his case plan; consequently, John Doe has failed to establish either that additional time would have allowed him to complete the case plan or that he could not complete the case plan based on the limited services during the pandemic.

John Doe claims the magistrate court emphasized his inability to parent his children so long as Jane Doe had an NCO prohibiting her from having unsupervised contact with the children. It appears John Doe is arguing that had his motion to continue been granted, he might have made progress on his case plan, thereby allowing Jane Doe to petition the court to terminate

4

Jane Doe's NCO with the children. This ignores the fact that Jane Doe's inability to spend unsupervised time with the children has no impact on John Doe's ability to comply with his case plan or visit with the children without Jane Doe. The magistrate court's finding of neglect was based on John Doe's failure to complete his case plan and provide proper care and control for his children. These grounds were completely separate from any issues relating to Jane Doe's NCO. There is no evidence to suggest that Jane Doe's NCO was somehow the source of John Doe's inability to provide stability for his children or take the necessary steps to improve his parenting techniques. Thus, based on the record, we cannot conclude that the magistrate court abused its discretion by denying John Doe's motion to continue.

**B.     The Magistrate Court Did Not Err When It Found That John Doe Neglected His Children**

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each

5

statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court terminated John Doe's parental rights on the basis of neglect pursuant to Idaho Code § 16-2005(1)(b). Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found that John Doe neglected his children because he failed to comply with his court-ordered case plan and because he failed to provide proper care and control for his children. On appeal, John Doe lists as an issue in his brief that the magistrate court erred in finding he neglected his children but does not provide any argument or authority on this issue, and therefore we need not consider it. *Doe (2018-24)*, 164 Idaho at 147, 426 P.3d at 1247. The argument also fails on the merits.

The magistrate court's finding of neglect by failing to provide proper care and control is supported by substantial and competent evidence. John Doe's untreated mental health concerns impair his ability to meet his children's basic needs. Throughout his time working with the Department, John Doe was resistant to feedback on ways to improve his parenting skills and was often volatile towards Department employees. John Doe refused to recognize that he had created an unsafe home environment for S.C. While his children were in the care of the Department, John Doe did little to improve his parenting skills. The magistrate court found that returning the children to John Doe's care would put them at risk of physical harm, either directly from John Doe or through lack of supervision. Thus, we affirm the magistrate court's conclusion that John Doe neglected his children by failing to provide proper care and control for his children.

The magistrate court's finding that John Doe neglected his children by failing to complete his case plan requirements is also supported by substantial and competent evidence,

6

especially because John Doe concedes on appeal that he did not complete his case plan. John Doe's case plan required him to obtain a mental health evaluation and follow all recommendations pertaining to the safety and well-being of his children, attend visitation and parenting classes, provide financial support and stable housing for the children, and comply with family preservation services upon the return of his children to his home. John Doe was referred twice to a service provider to obtain a psychological evaluation. Due to his hostile and aggressive behavior towards staff, he was involuntarily transferred to a different service provider. Following that transfer, John Doe refused to participate in mental health services for seven months. At the time of the termination trial, John Doe was on a waitlist to complete a psychological evaluation due to his own delay in seeking services. John Doe was eligible to receive case management services, counseling, and medication management services, but his participation in these services was inconsistent.

John Doe has profound mental health challenges. He reported being diagnosed with schizophrenia, depression, bipolar disorder, and post-traumatic stress disorder, but he did not provide proof of formal diagnoses. John Doe's compliance with his prescribed psychotropic medications was inconsistent. One month before the termination trial, John Doe called a crisis hotline, which resulted in deputies responding to his home. The deputies were unable to de-escalate John Doe, and he was involuntary committed to an inpatient mental health hospital where he remained hospitalized for several weeks. John Doe maintained that the event was "no big deal."

John Doe's mental health challenges manifest themselves in aggressiveness towards Department staff, mental health staff, and authority figures. When provided with information he disagreed with, John Doe became angry and profane. When distressed, John Doe made statements to Department staff about committing suicide or self-harm.

John Doe missed approximately half of his scheduled visits with his children. The visits he did attend were not positive. Despite being instructed otherwise, John Doe insisted on bringing large bags filled with knives and old food to the visits. John Doe was aggressive towards his children and engaged in unusual behaviors with them. John Doe was not receptive to feedback provided by the Department employees and would become volatile and defensive. S.C. resisted interacting with John Doe, choosing to play in a corner unless asked by John Doe to engage with him. S.C. responded poorly to the visits and was often distressed for several days

7

following the visits. Due to John Doe's behavior during visits, his lack of attendance at scheduled visits, and S.C.'s negative emotional response to visits, the Department and the children's guardian ad litem moved to end the in-person visits. The magistrate court granted the motion. John Doe has not seen his children since December 2019.

John Doe's social worker explained to John Doe the steps he needed to take to resume visitation, specifically, participating in mental health treatment and reducing his angry and aggressive behaviors. John Doe made no progress in those areas and has not inquired about the well-being of his children since visitation ended in December 2019. Prior to the termination trial, John Doe made one inquiry about resuming visits.

John Doe had little engagement with his children's service providers. The children were referred to the infant/toddler program in which John Doe initially refused to participate. John Doe eventually acquiesced to the program's involvement with S.C. and O.C., but his involvement was limited. John Doe participated in an intake session for protective parenting classes, which required him to provide a copy of a psychological evaluation to determine if he was suitable to participate in the classes. Because John Doe did not comply with psychological testing and could not provide a copy of a psychological evaluation, he was unable to participate in protective parenting classes. John Doe did not progress to a point where reunification with his children was possible, so no referral was made to family preservation services.

John Doe did not provide proof of employment to the Department. He reported receiving disability income, but did not provide proof of this income. Whatever income John Doe did receive was insufficient to pay rent for his apartment, as he historically depended on Jane Doe's disability income to cover the expense. John Doe's residence was not suitable for his children. A social worker visited the apartment twice; on both occasions there were bottles of prescription pills in locations accessible to children, empty food containers on the couch, storage bins on the front porch filled with garbage, and cigarette butts throughout the apartment. There were several knives and a baseball bat on the floor of one bedroom, which John Doe said were there for his protection. Based on this evidence, the magistrate court found that John Doe did not complete a single task in his case plan despite having the ability to do so. The magistrate court's conclusion that John Doe failed to comply with the case plan is supported by substantial and competent evidence.

Because there was substantial and competent evidence that John Doe neglected his children by failing to exercise proper parental care and control and by failing to complete the case plan, we affirm the magistrate court's finding of neglect.

**C.     The Magistrate Court Did Not Err When It Found Termination Is in the Best Interests of John Doe's Children**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the children to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the children's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the children's care after the children are placed in protective custody, the improvement of the children while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the children to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Although John Doe lists as an issue in his brief that the magistrate court erred in concluding that termination of his parental rights is in the children's best interests, he fails to provide any argument or authority on this issue, and therefore we need not consider the issue. *Doe (2018-24)*, 164 Idaho at 147, 426 P.3d at 1247. Even if the argument had been preserved, it fails on the merits. By the end of the termination trial, S.C. had been in the Department's care for sixteen months. O.C. had been in the Department's care for all of his fifteen months. Prior to S.C.'s removal from John Doe's care, Jane Doe left S.C. unattended in a bathtub, where she nearly died from drowning. John Doe was present in the home and aware that S.C. was alone in the bathtub, but took no steps to supervise S.C. or otherwise ensure her safety.

When S.C. was first placed in the care of the Department, she had abnormally long temper tantrums, often triggered by transitions during the day, and would become inconsolable. Her speech was limited and she refused to allow any physical affection. In August 2020, S.C. and O.C. were moved to a potential pre-adoptive home. The frequency of S.C.'s tantrums decreased significantly, and she is able to manage transitions without emotional distress. S.C.

9

entered speech therapy which improved her vocabulary, and she now welcomes physical affection.

Since his placement in foster care, O.C.'s muscle tone has progressed and he is an active, happy child. He regularly sees a neurologist and receives physical and occupational therapy. The long-term effects of O.C.'s physical condition are unknown, but the record indicates he will need therapeutic attention from a diligent caregiver throughout his childhood and will likely require care into adulthood. Both children are bonded with their pre-adoptive parents and do not express that they miss John Doe.

John Doe's untreated mental health concerns impact his daily functioning, his ability to maintain safe and stable housing, and his ability to make necessary changes in his behavior. John Doe did not recognize that his parenting techniques posed safety concerns for his children. Instead, he continued to cling to and vocalize his intention to continue the parenting practices that brought the children into the Department's custody. The magistrate court found that both children have special emotional, mental, and physical health needs that John Doe is unable to support. The magistrate court further found that John Doe's mental health concerns interfere with his ability to learn new information and make necessary changes, and that it would be detrimental to the children to remain in foster care for the indefinite period of time it would take John Doe to address these concerns.

The magistrate court's findings are supported by substantial and competent evidence. As such, the magistrate court's conclusion that termination of John Doe's parental rights is in the best interests of the children is supported by substantial and competent evidence.

## IV.

## CONCLUSION

The magistrate court did not err in denying John Doe's motion to continue. The magistrate court's finding that John Doe neglected his children is supported by substantial and competent evidence. The magistrate court's conclusion that terminating John Doe's parental rights is in the children's best interests is supported by substantial and competent evidence. Accordingly, we affirm the magistrate court's judgment terminating John Doe's parental rights.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.