IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 48444

| | |
|---|---|
| In the Interest of:  John Doe I, Jane Doe I, John Doe II, Jane Doe II, and Jane Doe III, Children Under Eighteen (18) Years of Age. | ) ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) |
| | ) |
| Petitioner-Respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| JANE DOE (2020-47), | ) |
| | ) |
| Respondent-Appellant. | ) |
| | ) |

Filed:  March 22, 2021

Melanie Gagnepain, Clerk

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Jerome County.  Hon. Jennifer Haemmerle, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Rockne K. Lammers, Jerome, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

Theodore R. Larsen, Jerome, for guardian ad litem

_____

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the magistrate court's judgment terminating her parental rights to her five minor children.  She argues the court erred by concluding that she neglected her children and that the termination of her parental rights is in the children's best interests.  We affirm.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and John Doe (Father) are the biological parents of five minor children: J.M. (born January 2010), I.M. (born February 2011), D.M. (born March 2012), S.M. (born February 2015), and A.M. (born February 2016). Mother and Father's parental rights have been the subject of three, separate child protection cases. When D.M. was born in 2012, Mother and Father lived in Las Vegas, and D.M. tested positive for methamphetamine. As a result, the State of Nevada initiated a child protection case, and Mother and Father were required to and did complete a case plan.

Shortly before S.M. was born in 2015, Father moved from Las Vegas to Jerome, Idaho, and Mother followed after S.M. was born. In 2016, Mother took S.M. to the hospital because she was having seizures. S.M. tested positive for methamphetamine, and Mother was criminally charged and convicted of felony injury to a child for driving S.M. to the hospital while under the influence of methamphetamine. As a result of this incident, the Idaho Department of Health and Welfare (Department) initiated a child protection case in May 2016. The parents completed their case plan, and the case was dismissed in June 2017.

A few months later, in September 2017, the Department received a complaint from the children's school that the parents were not meeting the children's needs. Generally, the report was the children were hungry, dirty, and otherwise unkempt. A Department social worker met with Mother at the parents' home, noticed possible drug paraphernalia, and asked to have the children drug tested. All five children tested positive for methamphetamine, and law enforcement declared the children to be in imminent danger on September 27.

On September 29, the Department filed a petition under the Child Protective Act, Idaho Code §§ 16-1601, *et seq.*, commencing this case. In November, the magistrate court granted the Department legal custody of the children, all of whom were in foster care, and approved and adopted a case plan for the parents. This case plan required Mother, among other things, to complete a substance abuse assessment and treatment; to participate in a parenting class; to ensure the children receive the necessary services and assessments; to attend their appointments; to obtain and maintain safe, stable, sanitary, and drug-free housing; and to provide a financial budget.

At some point, the Department allowed the parents extended home visitation with the youngest children, S.M. and A.M. The Department, however, terminated the extended visitation after a Department social worker observed a rodent infestation in the parents' home; the parents failed to get the children to their appointments; and Father tested positive for methamphetamine. Thereafter, in about February 2019, Mother was arrested on misdemeanor charges.

At that point, the United States Department of Homeland Security took Mother into custody and detained her on an immigration hold in Tacoma, Washington. After Mother was arrested and detained, Father moved back to Las Vegas despite that the children remained in foster care in Idaho. Although Father attempted to transfer the child protection case to Nevada, his request for an interstate compact was denied. Eventually, after ten months of detention, Mother posted bond and was released in November 2019. After her release, she joined Father in Las Vegas.

In December 2019, the Department filed a petition to terminate the parents' parental rights, alleging they had neglected the children by failing to complete the case plan. At some point thereafter, the parents returned to Idaho. The magistrate court scheduled a trial on the Department's petition for May 2020, but in April the court appointed a different attorney to represent Father because the parents had separated and were planning to divorce. According to Mother, in April she began living with a person to whom she referred as her fiancé, although she still remained married to Father. As a result of the change in counsel for Father, the court rescheduled the trial for July.

The magistrate court held a four-day trial on the Department's petition on July 7 and 8 and September 3 and 4. During the trial, the court heard testimony from three social workers; a child welfare clinician; a family preservation specialist; the guardian ad litem; the foster parents for I.M., for J.M. and D.M., and for S.M. and A.M.; the parents; and the children's maternal grandmother. On November 6, the court issued a 108-page memorandum decision granting the Department's petition and terminating the parents' parental rights. In this decision, the court cites two statutory provisions for terminating their parental rights: I.C. § 16-2002(3)(a) (providing termination for neglect as defined by I.C. § 16-1602(31)) and I.C. § 16-2002(3)(b) (providing termination for failure to comply with court order). The court's decision states that the court considered the Department's petition to allege each "type[] of neglect" defined by these statutes.

3

Then, the magistrate court found by clear and convincing evidence that the parents neglected the children by "failing to provide parental care necessary for their health, morals and well-being" and similarly that "the parents are unable to discharge their responsibilities to the children and as a result the children lack the parental care necessary for their health, safety and well[-]being." Further, the court alternatively found by clear and convincing evidence that neither parent completed the case plan. Finally, the court found that the termination of the parents' parental rights is in the children's best interests. Mother timely appeals the court's decision.[1]

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test

---

[1] Father separately appeals the termination of his parental rights.

4

requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006).

Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). "When deciding whether findings are clearly erroneous, [the appellate] Court does not substitute its view of the facts for that of the trial court. It is the province of the trial court to weigh conflicting evidence and to judge the credibility of the witnesses." *In re Doe*, 152 Idaho 910, 913, 277 P.3d 357, 360 (2012) (citation omitted).

## III.

## ANALYSIS

### A.    Neglect

Mother challenges the sufficiency of evidence supporting the magistrate court's findings that she neglected the children. Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

5

On appeal, Mother challenges the magistrate court's finding that "the parents made little forward progress in addressing the children's special and individual needs or demonstrating an ability to provide for the children's well-being." Specifically, Mother asserts this finding is "contrary to the evidence presented at trial" and does not support a finding of neglect. We disagree.

Regarding Mother's progress, the magistrate court found that Mother "has done little to educate herself on her children's progress or status." For example, Mother "made no progress on the case plan while incarcerated in Washington." Further, when Mother finally returned to Idaho for visitation in 2020, she "continued to struggle to interact with the children," to "respond to their diverse behaviors," and "to cope with temper tantrums or other outbursts." Instead, the court found Mother had not demonstrated the ability or a plan to meet the children's needs, but rather, she has consistently relied upon others to meet their needs. Substantial and competent evidence, including the testimony of the Department social workers who worked on the case, support these findings.

Mother also cites *Idaho Dep't of Health & Welfare v. Doe III*, 150 Idaho 752, 761, 250 P.3d 803, 812 (Ct. App. 2011), in support of her appeal for the general proposition that "a judicial evaluation of whether termination of parental rights is warranted must take into account practicalities of a parent's individual situation." Contrary to Mother's suggestion, however, the magistrate court did take into account the particularities of her situation. Indeed, the court provided a detailed, lengthy decision discussing these practicalities. Absent a more developed, cogent argument explaining what practicalities the court purportedly overlooked, we are unable to discern the nature and specifics of Mother's challenge. *See Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018) (ruling appellate court will not consider issue not supported by cogent argument and legal authority even in appeal from termination of parental rights).

Finally, Mother generally states that "during the time of [the coronavirus pandemic] the ability of a parent to work a case plan is severely impacted[;] their ability to visit their children is almost totally non-existent." While the pandemic has undoubtedly changed the manner in which a parent must perform a case plan, Mother fails to articulate how the pandemic adversely impacted her ability to perform her case plan. Also, contrary to Mother's assertion that visitation

6

during the pandemic "is almost totally non-existent," the record in this case demonstrates that during the pandemic the Department has provided virtual visitations.

Furthermore, the magistrate court expressly acknowledged the pandemic "severely" impacted the "nature and quality" of visitation with the children in 2020, including physical visitation. This acknowledgment indicates the court understood this impact and did not attribute visitation difficulties related to the pandemic to Mother. Moreover, by the time the pandemic occurred in early 2020, Mother already had failed to have physical contact with the children from February 2019 until at least November 2019 as a result of her immigration detention in Washington. Mother's failure to address her immigration status caused this detention, which seriously impacted Mother's ability to complete her case plan before the pandemic occurred.

Based on a review of the record, we hold that substantial and competent evidence supports the magistrate court's findings that Mother neglected the children under both I.C. § 16-1602(31) (defining neglect) and I.C. § 16-2002(3)(b) (failing to comply with court order). For example, the evidence shows Mother has a lengthy and pervasive history of drug abuse beginning when she was seventeen years old. As a result of her drug abuse, the children have been the subject of three child protection cases in two different states; all of the children have tested positive for methamphetamine at least once; and some of them have tested positive more than once. Mother has failed to demonstrate an understanding of the impact that her drug abuse has on the children. *See State, Dep't of Health & Welfare v. Jane Doe (2019-32)*, 166 Idaho 173, 177, 457 P.3d 154, 158 (2020) (noting drug problem that interferes with parenting supports finding of neglect). Further, she has failed to demonstrate the ability or a feasible plan to remain drug-free. Despite many opportunities, she has not completed or maintained a support program, after care, counseling, or sponsorship to maintain sobriety.

Further, as the magistrate court found and as the evidence shows, Mother does not understand the children's many and various special needs and cannot provide for those needs. All five children have various levels of developmental delays including verbal, physical, emotional, social, and academic. Many of these delays are serious in nature. One child has autism, is nonverbal, and is learning sign language in foster care. As a result of the children's numerous needs, Mother has difficulty engaging with all five children during visitations, struggles to respond to the children's diverse behaviors, continues to demonstrate an inability to

7

understand the children's needs, and has not developed the parenting skills to deal with the children's "adverse behaviors."

Substantial and competent evidence supports the magistrate court's conclusion that Mother failed to provide for the children's well-being and to complete the case plan. Accordingly, we hold the court did not err by concluding Mother neglected the children.

**B.     Best Interests**

Mother also challenges the magistrate court's finding that the termination of her parental rights is in the children's best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Mother contends substantial and competent evidence does not support the magistrate court's finding that the termination of her parental rights is in the children's best interests. In support of this challenge, Mother argues the court failed to consider all the evidence. Specifically, she argues:

> The magistrate court should have considered all the evidence and found that it was not in the child's [sic] best interests to terminate rights of either parent. Once all of the evidence is considered, there is not substantial and competent evidence to support the magistrate court's finding that termination was in the best interests of the child(ren) [sic].

This cursory argument, however, essentially requests this Court to reweigh the evidence and substitute its view of the facts for the magistrate court's view. As set forth above, however, we will not set aside the magistrate court's factual findings on appeal unless they are clearly erroneous. *See In re Doe*, 152 Idaho at 913, 277 P.3d at 360 (ruling court will not substitute

view of facts, weigh conflicting evidence, or judge credibility). The magistrate court's province is to weigh conflicting evidence and to judge the witnesses' credibility. *Id.* In determining whether factual findings are clearly erroneous, this Court does not substitute its view of the facts for the magistrate court's view. *Id.* Rather, this Court reviews the record to determine if substantial and competent evidence supports the factual findings. *Id.* Accordingly, we decline to reweigh the evidence in this case.

Regardless, a review of the record demonstrates that substantial and competent evidence supports the magistrate court's finding that termination of Mother's parental rights is in the children's best interests. For example, at the time of the termination trial, Mother had failed to address her substance abuse issues. She had still not secured appropriate housing for the five children, but rather, she was living with her fiancé in a two-bedroom apartment. She had failed to provide a budget, to obtain a legal income, and to provide financially for the children. Further, no evidence indicates she has taken any action "to address her legal residency status." Meanwhile, while in foster care, the children have made "steady progress emotionally, educationally, developmentally, and socially in the care of the foster parents and with regular school attendance and multiple therapies." Accordingly, the magistrate court did not err by concluding that the termination of Mother's parental rights is in the children's best interests.

## IV.
## CONCLUSION

We hold that substantial and competent evidence supports the magistrate court's findings that Mother neglected the children and that terminating Mother's parental rights is in the children's best interests. Accordingly, we affirm the judgment terminating Mother's parental rights.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.